Catherine McCarthy v. Julia · Colton, Charles McCarthy, Ella Thompson and Daniel McCarthy, Appellants.

**Deeds:** DELIVERY: EVIDENCE. The possession and recording of a deed during the life of the grantor and unequivocal assertions of title thereunder will establish delivery of the instrument so as to pass title, as against random statements of the grantee that he claimed only a life interest in the property, made to those having no interest therein and to whom he was under no obligation to disclose his title.

**Adverse possession:** LIMITATION OF ACTIONS. Those desiring to question the title of one in possession of land under a recorded deed conveying the fee must do so within the statutory period after his assertion of exclusive ownership is made.

*Appeal from Louisa District Court.*— Hon. W. S. Withrow, Judge.

TUESDAY, JULY 10, 1906.

REHEARING DENIED, THURSDAY, JUNE 6. 1907.

ACTION to have plaintiff's one-third interest in certain real estate established and set off to her in partition. Decree for plaintiff, and defendants appeal.— *Affirmed.*

*Wilson & Wilson,* and *C. A. Carpenter,* for appellants.

*W. E. Blake,* for appellee.

McClain, C. J.— Plaintiff's claim to an undivided interest in the property, as widow of Daniel McCarthy, deceased, is predicated on fee-simple title in him under a warranty deed from his brother Charles, also deceased; while the defendants, his children, assert title under a will of Charles by which their father was given a life estate only with remainder in fee to them. The deed from Charles to Daniel was acknowledged in 1869 and was recorded by Daniel September 1, 1879. Charles made his will January 5, 1879, and died May 25, 1879. If therefore the deed was delivered prior to the death of Charles, then the plaintiff is entitled to dower in the property, while, if the deed was not so delivered, defendants are entitled to the entire property under the will. It is conceded that the possession of the deed by Daniel McCarthy at the time he placed it on record gives rise to a presumption of a delivery by the grantor Charles McCarthy during his lifetime, and the only questions argued as to the title of Daniel McCarthy, on which depends plaintiff's right to an interest therein by way of dower, are: (1) Whether the presumption as to delivery is negatived by the declarations and conduct of the grantor and grantee, and (2) whether the grantor was in possession under claim of right or color of title for the statutory period.

I. Although the brothers Charles and Daniel lived together on the land in controversy as a farm after the acknowledging of the deed in 1869, and there is much uncertainty in the evidence as to which of them was claiming the title, we are reasonably satisfied that Daniel was not making any claim to the property as his own before 1879. His conduct and declarations were inconsistent with claim of ownership, and therefore inconsistent with any delivering of the deed to him before that

1. Deeds: delivery: evidence.

time.  He seems to have anticipated that in some way the farm was to belong to him and his children, but he certainly did not regard the title as fully vested in him.  This seems also to have been the understanding of Charles.  Such understanding is also indicated by the fact that in his will made in January, 1879, he devised a life estate to his brother's children.  The fact that Daniel had remarried in 1871 and had some difficulty with his second wife, the plaintiff in this action (the defendants being children by his first wife), may account for the delay on the part of Charles to deliver the deed in pursuance of the intention with which it had been executed.  But within a month after the making of the will, and two or three months before the death of Charles, Daniel visited him in Cincinnati, where he then resided, and there is nothing in the evidence necessarily inconsistent with the assumption that the deed was then delivered.  It is true that he made known to his children the provisions of the will by which he had only a life estate, and they had the remainder; but he recorded the deed, and in 1880, 1895, and 1900 he executed mortgages on the land in which plaintiff joined and which were duly recorded, in which he asserted full and complete ownership by way of warranty of title.  It appears that he allowed his children to believe that his only claim to the property was as life tenant under the will, and that in random conversations with persons who had no interest in the property, and to whom he was under no obligation to disclose his title, he asserted only a life estate.  To one of the mortgagees he stated, when inquiry was made, that this deed was on record, but that his children seemed to think that it was not, and it was pleasanter for the family, perhaps, to have them think so.  But we think that the possession and recording of the deed and these unequivocal assertions of title under it should not be swept away as evidentiary facts by mere declarations in random conversations with friends and neighbors.  We are satisfied that there is sufficient evidence to warrant the con-

clusion that, before the death of Charles, the deed lawfully came into the possession of Daniel by delivery such as would pass the title. Any other conclusion would require the finding of an unlawful, even a criminal, act on the part of the father of defendants, and there is nothing to justify the belief that any such wrong was committed by him.

II. Much of what has been said is applicable to the issue as to adverse possession. Whatever may have been the nature of the possession of Daniel McCarthy, whether as

2. Adverse possession: limitation of actions. tenant of Charles or his agent in renting the land to others, or as life tenant under the will, his acts in recording the deed and in executing mortgages as fee owner were unequivocal assertions of full ownership, and of these acts the defendants had record notice. The defendants could not treat the continued possession as an assertion of a right as life tenant. They were bound to know that their father was asserting the right to possession as owner in fee under his recorded deed, and, if they desired to question his title, they should have done so within the statutory period after such unequivocal assertion of full and exclusive ownership was made. Their father did not die until 1903, and we reach the conclusion that title had become perfect in him by adverse possession.

The decree establishing plaintiff's one-third interest in the property as widow and providing for partition is therefore *affirmed*.