ELSIE NORTON, *Appellee*, v. GEORGE W. COLLINS,
*Appellant.*

No. 15,889.

SYLLABUS BY THE COURT.

DEEDS—*Delivery*—*Escrow.*  The owner of land executed a war-
ranty deed, without reservations or exceptions, conveying
the land to a member of his family, and deposited it in the
hands of a third person to be delivered to the grantee "in
case anything happened to him or in case he died."  There
was no evidence tending to show that he retained dominion
or control over the deed.  After his death it was delivered
to the grantee.  Evidence examined and held sufficient to
warrant a finding of the court that the delivery was effective.

Appeal from Graham district court; CHARLES W.
SMITH, judge.  Opinion filed November 6, 1909.  Af-
firmed.

*John S. Dawson,* for the appellant.

*F. D. Turck,* for the appellee.

The opinion of the court was delivered by

PORTER, J.:  Elsie Norton, formerly Elsie Smith,
brought this action in ejectment and recovered judg-
ment.  The defendant brings error.

The land in controversy, which is a farm of 200
acres, at one time belonged to Isaac Lamphier, who
died in 1906, at the age of eighty-six years.  The plain-
tiff had been a member of his family for twenty-one
years.  She went to live with him and his wife when
she was sixteen years old, under an agreement that if
she would remain with them until their death they
would leave her all their property.  They had no chil-
dren of their own and treated her as one of the family.
The undisputed testimony shows that she faithfully
fulfilled her part of the agreement.  She helped with
the usual housework, milked the cows, fed the stock,

and sometimes worked in the field. She was paid no wages and received only her board and clothing. The wife of Isaac Lamphier died ten years before his death occurred. The plaintiff nursed her in her last illness, and remained with Mr. Lamphier until his death, nursing and caring for him in the later years of his life. Her claim to the land in controversy, however, is not based upon the agreement with the Lamphiers and performance on her part, but upon a warranty deed which Lamphier executed in 1900. The deed was a general warranty, without exceptions or reservations. It was dated September 5, 1900, and acknowledged October 27, 1900. The testimony was that it was drawn at the request of the grantor by F. D. Turck, an attorney. The grantor went to Turck's office with a description of the land and said he desired to make a deed conveying the land to Elsie Smith. He was informed by Mr. Turck that in order to make the conveyance valid a delivery was necessary, and that the deed would have to be delivered by him to the grantee or to some one for her in his lifetime. On the day it was acknowledged Lamphier took the deed to the bank and left it with E. E. Mullaney, who testified as follows:

"He said he wanted it left with us to be delivered to Elsie Smith in case anything happened to him, or in case he died. I don't remember the exact language, but simply in case that he died, or in case of his death, he wanted it delivered to her."

After Lamphier's death the deed was delivered to her by Mr. Mullaney and placed on record, and this action was brought.

The defendant, who is a brother-in-law of Isaac Lamphier, claims title by virtue of a warranty deed executed by Lamphier in 1903. He testified that the deed was handed to him by Lamphier at the latter's house in May, 1903; that he paid one dollar to him at the time and asked him if it was his desire that the

deed be recorded; that Lamphier told him to record it
at once, which he did.   They had no previous arrange-
ment or understanding that the deed was to be made.
He further testified that he had no knowledge of the
existence of the deed to the plaintiff, and that he took
immediate possession of the land and occupied it ex-
clusively, openly and notoriously from that time.   On
the contrary, the plaintiff testified that she informed
him of the existence of her deed long before he re-
ceived his, and, further, that from the time he took
possession of the farm until Lamphier's death he ac-
counted to Lamphier for the rents and that Lamphier
paid the taxes.   There was evidence tending to corrob-
orate the plaintiff in this respect.   The defendant kept
a store, at which Lamphier had an account; the ac-
count was kept in the handwriting of the defendant
and showed a charge against Lamphier for the taxes
of 1903, and the tax receipt for that year was in Lam-
phier's possession at the time of his death, together
with a memorandum, or waybill, showing the amount
of wheat raised on the land in 1903.

There was some evidence tending to show that in
1903 Isaac Lamphier changed his mind and concluded
to dispose of all his property in his lifetime, and to
make a different disposition of the land in controversy.
In the deed to the defendant he included not only the
200 acres but 80 acres of other land, to which the plain-
tiff has made no claim.   About this time he conveyed
all the rest of his property to the plaintiff.   It con-
sisted of two pieces of town property and some notes
secured by mortgages, and he gave her the immediate
possession of both real and personal property.

The defendant has cited a great many authorities
in reference to what will constitute a valid delivery
of a deed to take effect on the grantor's death.   But the
main contention is that the evidence was more favor-
able to the defendant than to the plaintiff.   In view of
the general finding of the trial court on the facts, we

deem it unnecessary to review the law governing this class of conveyances. A full discussion of the subject, with cases cited, will be found in *Young v. McWilliams,* 75 Kan. 243. We are urged by the defendant, however, to give the most careful consideration to the Young case, and it is insisted that the facts there are sufficient to distinguish it from the present case. In the opinion in that case Mr. Justice Mason, speaking for the court, stated the general rule as follows:

"But where he deposits it with a third person, to be turned over upon his death to the grantee, this is a good delivery if he thereby surrenders all control over it, but not otherwise." (Page 245.)

In several particulars the facts in that case differed from the facts in the present case. The deed executed by Young reserved to him the use and income of the property during his life. A delivery directly to the grantee would have had the same effect, so far as the grantor's rights were concerned. In the opinion in that case some weight is given to the fact that the grantor conveyed other property to other heirs as a circumstance shedding light on his probable intentions concerning the conveyance; and it is argued in this case that the fact that Lamphier, after the execution of the deed to the plaintiff, apparently altered his intention not only with respect to the land in controversy but determined to dispose of all his property in his lifetime, and conveyed this land to the defendant, who took possession during the grantor's lifetime, and the further fact that he conveyed all his other property to the plaintiff, should be considered as controlling circumstances in determining his intention at the time he executed the first conveyance. In the Young case the fact that the grantor had conveyed other property to other heirs was not held to be controlling, but only a circumstance to be considered in connection with the further and more important fact that the deed in terms reserved to the grantor a life estate. Moreover, the

Norton v. Collins.

circumstances surrounding the transaction in the Young case were of more than usual importance for the reason that we were of the opinion that the testi-mony of the custodian concerning what actually occurred when the deed was left with him was without probative force because he had no recollection of what was said by the grantor. In the present case the testimony is clear and unambiguous as to what the grantor said at the time of the delivery, and, with the other circumstances in evidence, was sufficient to authorize the general finding of the court that his intention was that the deed should be retained by Mullaney and delivered to the plaintiff in case of his death.

In arriving at the conclusion that there was an effective delivery of the deed in the Young case considerable weight was attached in the opinion to another fact, in which the cases are precisely alike, and that was the absence of any evidence, or, as the opinion in that case stated, "convincing evidence" (p. 251), showing any intention on the part of the grantor to retain control over the deed. While the evidence here shows that the grantor exercised control over the property and made a subsequent deed purporting to convey the title, our attention has not been directed to any evidence tending to show that at the time he deposited the deed to the plaintiff he retained any control or dominion over it. The whole controversy turned upon the intent with which he deposited the deed in the hands of the custodian. This could only be determined from the facts and circumstances in evidence. We interpret the language "in case anything happens to me" the same as though the grantor had said "in case of my death" or "when I die." Under some circumstances the use of the same language would more naturally mean something different. If, being about to go upon a journey or about to submit to a dangerous surgical operation, he had said "in case anything happens to me," the circumstances would naturally indicate that he had

reference to the possibility of his death as something which might or might not occur, and that he intended to retain control of the instrument in case nothing did happen to him. In the absence of any testimony, therefore, showing an intention to limit his language to something which might or might not happen, and, in view of his age and situation in life, we think the court was justified in finding that he meant the same as though he had said: "When my death occurs I want the deed delivered to Elsie."

The general finding of the court precludes us from granting any relief to the defendant. Every inference favorable to the plaintiff which may be drawn from the testimony must be indulged, including a finding that it was the intention of the grantor that the deed should take effect at once, and that he parted with all dominion and control over it. (*Wuester v. Folin,* 60 Kan. 334; *Doty v. Barker,* 78 Kan. 636.)

The judgment is affirmed.