Ross v. Perkins.

No. 19,097.

ELIZABETH C. ROSS, *Appellant*, v. NELLIE D. PERKINS, and IDA M. STEWART, *Appellees.*

SYLLABUS BY THE COURT.

1. DEEDS—*Effective and Valid Delivery to Grantees.* A grantor executed two deeds conveying an undivided one-half of certain land to each of two persons, who were relatives and had formerly been members of his family, upon the consideration that each grantee should pay one-half of his debts and funeral expenses and that they should erect a monument of a certain value at his grave. After placing each deed in an envelope with the name of the grantee endorsed thereon he handed both to one of the grantees, who was present when they were executed, with the remark, "When you record yours, you may record Ida's also," and she and the grantor then rode together to a bank, when he carried them into the bank and handed the deeds to a custodian with the request that he keep them, and in response to an inquiry the grantor told the custodian that he would find the directions on the inside. The conveyances were made on the further condition that the grantor should retain possession of the land during his lifetime, and also that if he should marry again his wife should retain undisturbed possession during her lifetime, and that during this period the grantees should not sell nor incumber the land. *Held*, that the facts in the case are sufficient to support a finding that there was a valid and effective delivery of the deeds to the grantees.

2. SAME—*Rights of a Subsequent Wife of Grantor Determined— Life Estate Terminated.* Shortly after the execution of the deeds the grantor married again and his wife lived with him upon the land for about seven years and until his death. In a controversy as to the validity of the deeds it was held in the trial court that the conveyance of more than one-half of the land operated as a fraud on the marital rights of the wife and she was awarded one-half of the land. She complains of the ruling and insists that she was entitled to the whole of it. Under the facts in the case it is held that she has no reason to complain of the decision.

Appeal from Douglas district court; CHARLES A. SMART, judge. Opinion filed December 12, 1914. Affirmed.

*Hugh Means,* and *Raymond F. Rice,* both of Lawrence, for the appellant.

*S. D. Bishop,* of Lawrence, for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.: The appellant, Elizabeth C. Ross, began this action to quiet her title to certain land situated in Douglas county of which she was in possession. From the facts as found by the trial court it appears that on April 22, 1904, W. C. Ross was the owner of the land in question, which was of the value of about $2500 and was practically all the property which he did own. He was then sixty-nine years of age and not in rugged health. His wife had died about a year before that time, and while they had no children of their own, the appellees, Mrs. Nellie D. Perkins and Mrs. Ida M. Stewart, who were nieces, had been members of the family for a considerable time and had been treated to a great extent as their own children. On the day mentioned, in accordance with a prearranged plan, Ross conveyed an undivided one-half interest of his property to each of the appellees in consideration that each should pay one-half of his debts and funeral expenses at his death and that they should erect a $200 monument

at his grave. On separate papers attached to the deeds and made a part of them was the statement:

"It is especially understood that should I marry during my life time that the property thus deeded is not to be sold or incumbered during the life time of my wife, should I elect to have one, and that in such case you are to meet one-half of her funeral expenses, and that she is to retain undisturbed possession and use of same during her natural life time, and after her death and burial you are to inherit one-half of personal property then on hand."

The deeds were placed in separate envelopes, which were sealed and the names of respective appelles endorsed thereon, and these, in turn, were inclosed in a large envelope and delivered to Henry Benson, a friend of the grantor, who was an officer in a Lawrence bank.

It appears that early in February, 1904, Ross began a correspondence with the appellant, then a resident of the state of Washington, which led to a marriage engagement, and it was arranged between them that she should come on to Lawrence, arriving there on April 20, 1904, when they would be married. She came, but did not arrive until April 23, and on that day they were married. Thereafter they lived together in the Ross home on a part of the land in question until Ross's death on September 29, 1911. During this time she sold some property of her own for $500 and expended $200 of the amount on the Ross land and gave the balance of it to her sons. Before her marriage to Ross she had a general knowledge that he owned some land, the exact extent of which she did not know. Shortly after the marriage she learned that he had made some arrangement as to the property, but did not know the exact disposition made of it until after his death, but she supposed all the time that he had made a will by the terms of which she was to have only a life interest in the property. On the day after his death the appellee, Mrs. Perkins, obtained the deed executed to her from the custodian, Mr. Benson, and placed it on record, and the

deed to appellee, Mrs. Stewart, was procured by her and placed on record on October 2, 1911.

From all the testimony in the case, none of which has been brought up on this appeal, the court found that the deeds had been legally delivered to the appellee; and another finding was that the conveyances operated as a fraud upon the marital rights of the appellant. It was decided by the court that the deeds should be set aside only so far as they tended to defeat the rights of the appellant to inherit a one-half interest in the land, and it was adjudged that an undivided half of the land was owned by appellant and that each of the appellees had an undivided quarter in the land, and, further, that the life estate provided for in the deeds should be terminated by the judgment.

The first contention of appellant is that the court erred in holding that there was a valid delivery of the deeds. It is true, as appellant contends, that before a deed can operate as a transfer of title there must be an intention that it should become effective as a present conveyance, and this intention is to be obtained from the words and acts of the grantor. It is likewise true that a complete legal delivery implies a surrender of control of the instrument by the grantor and an assent or acceptance by the grantee. (*Wuester v. Folin,* 60 Kan. 334, 56 Pac. 490.) A formal manual delivery of the deed, however, by the grantor to the grantee is not essential, nor is it necessary that any set phrase should be used as a declaration of intention. (*Kelsa v. Graves,* 64 Kan. 777, 68 Pac. 607; *Bremyer v. School Association,* 86 Kan. 644, 122 Pac. 104.) It is settled, too, that if the grantor deliver the deed to a third person with the intention to part with control of the instrument and to divest himself of title, it will constitute a transfer, although it is agreed that the deed shall not be recorded during the lifetime of the grantor. (*Zeitlow v. Zeitlow,* 84 Kan. 713, 115 Pac. 573.) It has also been held that delivery of a deed to a custodian, to be passed

to the grantee at the death of the grantor, and which in
effect provided that the possession and enjoyment of
the property by the grantee should be postponed until
the grantor's death, would be construed to mean that
title was to vest when the delivery to the custodian was
made.  (*Nolan v. Otney,* 75 Kan. 311, 89 Pac. 690.)
·And it has been decided that an effective transfer may
be made by a constructive delivery of a deed.  (*Tucker
v. Allen,* 16 Kan. 312, 319; *Kelsa v. Graves,* supra.)

The facts and circumstances of the case tend strongly
towards proving an actual delivery of the deeds.  After
they had been executed and placed in envelopes with
the names of the grantees thereon, they were handed
by Ross to Mrs. Perkins, who kept them until they
drove to the bank, when she turned them over to Ross,
who carried them in and put them in Benson's hands
with the request that he keep them.  Both were placed
in a larger envelope, on the outside of which the name
of Ross was written.  There is a fair implication that
Ross parted with control of the deeds and that there
was an acceptance of them by the grantees when he
handed them to Mrs. Perkins, and that he was acting
for the appellees when he carried them into the bank
and turned them over to Benson.  However, if it be in-
ferred that control of the deeds was not surrendered
until he handed them to Benson, there are sufficient
facts to support a delivery when he placed the deeds in
the hands of the custodian with the statement that he
would learn from the inside of the envelopes what was
to be done with them.  That Ross intended that the
deeds were thereafter to be within the control of the
grantees and not of himself is also shown by the re-
mark to Mrs. Perkins, "When you record yours, you
may record Ida's also."  As shown by the authorities
cited, the fact that the enjoyment of the land was to be
postponed until Ross's death and until the death of the
second wife, in case he married one, does not militate
against the theory that the delivery of the deeds was

complete and that the estate became vested in the grantees when the deeds were passed over either to the grantees or to the custodian. (See, also, *Seifert v. Seifert*, 66 Kan. 732, 71 Pac. 271; *Young v. McWilliams*, 75 Kan. 243, 89 Pac. 12; *Brady v. Fuller*, 78 Kan. 448, 96 Pac. 854; *Norton v. Collins*, 81 Kan. 33, 105 Pac. 26.)

Assuming, as we must, that there was an effectual and valid delivery of the deeds, the next contention we have to meet is that if the transfer constituted a fraud on the marital rights of the appellant, so far as the transfer prevented her from inheriting one-half of the land, it was ineffectual for any purpose. It was held by the court that the deeds were valid and binding as to one-half of the land, but that the transfer of more than one-half operated as a fraud on the marital rights of the appellant. It is not easy to see how the transfer of one-half of the land, nor even the whole of it, can be regarded as a fraud upon the rights of appellant. She and Ross had been neighbors in Douglas county for many years, and it is fair to presume she was acquainted with his situation and financial condition. It appears she did not know exactly what disposition he had made of his property, nor just what provision had been made for her, but from what she had learned she supposed that he had made a will devising the property to others, but by the terms of which she was to have a life interest in the property. While the writings executed by him were deeds instead of a will, they were intended to accomplish substantially what she understood had been done, that is, there was a transfer of the fee of the land to others, and the transfer did, in effect, give her a life estate in the property. By the terms of the provision she was "to retain undisturbed possession and use of the same during her natural life time." During her life the grantees were not to have the use or possession of the property, and could not transfer, incumber or embarrass her life interest or the posses-

sion and use of the property given to her, and, besides, the grantees were each required to pay one-half of her. funeral expenses at her death. There is reason to criti- cize Ross's action in not giving appellant definite in- formation as to the nature of the transfer he had made and specifically as to what provision had been made for her, but her understanding of the provision, however gained, appears to have been substantially correct as well as satisfactory to her. Under all the circum- stances the provision made for her can not well be regarded as unjust and unfair, but, on the other hand, appears to have been quite liberal, and was, in fact, about the share she contemplated would be given to her. The conveyance made to the grantees does not suggest injustice nor undue discrimination. No children had been born to Ross and his first wife, but Nellie D. Per- kins, who was a niece of hers, had been reared in the family and had been treated as their own child. At the last sickness of Mrs. Ross, Nellie had left her own home and child and had gone to the Ross home, where she took care of her aunt for some time. Ida M. Stewart was a niece of Mr. Ross, and she had likewise made her home in the Ross family for a considerable period dur- ing her childhood and girlhood, and had also assisted in the care of Mrs. Ross in her last illness. The Ross family was much attached to these nieces, and their affection was fully reciprocated. There may be grounds for appellees to complain of the decision set- ting aside the transfer as to one-half of the land and giving appellant a title to one-half of it, but they have filed no cross-appeal and are not in a position to allege error. We think there is no good ground for appellant to complain of the ruling of the court. She has no reason to insist that one-half of the land is not the full share to which she is entitled nor that the judgment operated unjustly as against her. It may be that be- cause of the relations of the parties the giving of an outright title to one-half of the land is a better disposi-

tion of the case and accomplishes better results than would have been an award of the use of the whole estate for a lifetime, and having determined that she shall have the title to one-half of the land, it necessarily follows that the life estate provided for in the deeds by Ross is terminated.

None of the errors assigned can be sustained, and, therefore, the judgment of the district court will be affirmed.