No. 19,098.

CORDELIA THOMPSON, *Appellee,* v. J. O. THOMPSON
et al., *Appellants.*

SYLLABUS BY THE COURT.

1. POSTNUPTIAL AGREEMENT—*Delivery Sustained by the Evidence.* The evidence examined and held sufficient to sustain a finding that a postnuptial agreement between a husband and wife was delivered.

2. TRIAL—*No Prejudicial Error Appears.* Various assignments of error examined and held to be ill founded, inconsequential, or not reviewable.

Appeal from Rice district court; DANIEL A. BANTA, judge. Opinion filed February 6, 1915. Affirmed.

*C. M. Williams,* of Hutchinson, for the appellants.
*J. W. Brinckerhoff,* and *W. W. Stahl,* both of Lyons, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was commenced by Cordelia Thompson against the children of her husband, James Thompson, to establish her title to a tract of land. The plaintiff recovered and the defendants appeal, and the substantial question is whether or not a contract between the husband and wife relating to the land, executed after their marriage, was delivered.

In December, 1897, the plaintiff, then Cordelia Moreland, a widow having children, and James Thompson, a widower having children, were married. Before the marriage an antenuptial agreement was made whereby it was provided, that if the plaintiff should survive James Thompson as his widow, she should receive the land in controversy, free from incumbrances, and certain personal property, to hold during her lifetime. This contract was left with the attorney who prepared it. In April, 1898, the following contract was signed by the parties:

"In consideration of the conveyance to James

Thompson, by his wife, Cordelia Thompson, formerly Cordelia Moreland, on this April 29th, 1898, of Lots Five (5) and Six (6) in Block Twenty-seven in town of Little River, Kansas, she shall have at his death, in case she shall survive him, the southeast quarter of Section thirty (30) in Township nineteen, Range six in Union Township, in fee simple as her share of his estate together with the full ownership and title of the personal property referred to in the marriage contract, made between them on December 18th. 1897, are to be free of encumbrances to her as provided in said marriage contract. She by this contract receiving the full title to said property referred to in said marriage contract instead of the life estate in consideration of said house and lots in Little River, Kansas.

. "The marriage contract being attached hereto."

This contract was prepared by the attorney who prepared the antenuptial agreement, was attached to the antenuptial agreement, and remained in the attorney's possession. On the same day the plaintiff executed the deed to the lots in Little River, which was afterwards recorded and delivered to James Thompson. The parties lived together until the death of James Thompson, which occurred in April, 1912.

The fact of delivery was established by testimony and by inferences from proved facts which the court stated in a written opinion as follows:

"The said post-nuptial contract was never in any manner revoked or annulled during the lifetime of the said James Thompson deceased. Neither were its terms in any manner altered, changed or modified. There is nothing in the evidence in this case even tending to show that at the time of the execution of the post-nuptial agreement the said James Thompson, deceased, was not in full possession of all his mental faculties, or that anything in connection therewith was not fully understood by him, or that he was taken advantage of in any respect whatever. Neither do the records or evidence show that the said agreement between him and his wife was not entirely fair and reasonable.

"There is no testimony in the case at all concerning

the attitude of James Thompson, deceased, subsequent to the execution of the post-nuptial contract since the day upon which it was executed. So that it must be concluded, so far as he was concerned, that his attitude towards the plaintiff under the terms of the contract was the same as that on the day of its execution. That the consideration for its execution was at all times retained by him up to and including the period of his death, and that he had refused during his lifetime to make a restoration thereof. . . . The only parties, according to the evidence, present at the time of its execution were the parties to the agreement and Mr. Jones, with whom it was left. Mr. Jones is unable to remember under what circumstances the paper was deposited with him, and the only evidence in the case on that point is the testimony of Mrs. Murray, who testified that in a conversation between the plaintiff and her deceased husband on the day of the execution of the instrument she heard the deceased say that he had left it with Mr. Jones until the plaintiff called for it. This testimony would tend to indicate that the paper was left with Mr. Jones as the agent of the plaintiff, and not as the representative of both parties.

"The purpose underlying this conduct is probably explained by some testimony in the case to the effect that some of his children had taken or made away with a former document of some kind, and that they would be surprised, or there would be a surprise in store for somebody when it was learned what he had done, or words to that effect. . . . This agreement was made on the 29th day of April, 1898, and was left with Mr. Jones on that day. On that day a deed for the property described in the instrument was executed by the plaintiff to her deceased husband, delivered to Mr. Foley, recorded by him, and afterwards delivered to the deceased. They continued abiding together as husband and wife from that time until the 9th day of April, 1912, at which time James Thompson, the husband of the plaintiff, died. Approximately fourteen years had elapsed from the execution of the post-nuptial agreement to the time of his death. It was never revoked, altered, changed or modified by him in his lifetime, and there is no testimony in the case tending even to show that he ever manifested any purpose in that direction. Surely these circumstances must be entitled to some consideration in the determination of this case. There

is no evidence of any incapacity or disability upon his part during any of the time, and the fact that it was allowed to remain in full force and effect is indubitable proof to me that it should never have any other effect than that represented by its terms. . . . I am inclined to believe from all of the testimony that the document was not left in escrow, but was left with Mr. Jones for safe keeping to be delivered to the plaintiff at such time as she might see fit to call for it."

Manifestly this conclusion is well sustained. (*Young v. McWilliams,* 75 Kan. 243, 89 Pac. 12; *Doty v. Barker,* 78 Kan. 636, 97 Pac. 964; *Norton v. Collins,* 81 Kan. 33, 105 Pac. 26; *Zeitlow v. Zeitlow,* 84 Kan. 713, 115 Pac. 573.)

In *Doty v. Barker* it was said:

"As stated in *Wuester v. Folin,* 60 Kan. 334, 56 Pac. 490, the court was authorized to determine this question of delivery, which is largely a matter of intention, from the words and acts of the grantor." (p. 641.)

An allegation of the answer that the plaintiff deeded her lots to her husband to defraud her creditors was stricken out. If the fact were true, it did not constitute a defense to the action. The parties and their privies were bound, and creditors only could complain.

Evidence was offered in an effort to show that the postnuptial agreement was not in fact of the character indicated by its terms, but was intended as security. Since the evidence was oral, the finding of the court upon the subject in favor of the plaintiff is conclusive here.

Certain oral evidence offered and rejected was not presented to the court at the hearing of the motion for a new trial in the manner required by statute (Civ. Code, § 307) and consequently the rulings of the court on the subject are not reviewable.

That the postnuptial contract was executed is not disputed. That it was delivered has been well established. It was executed and delivered for a valuable consideration, deemed adequate by James Thompson, who was competent to contract and not imposed upon in any

way. This consideration he refused to return and kept until his death. The contract was not altered or re-voked during James Thompson's lifetime. Upon his death the plaintiff was entitled to the property which the contract gave her.

The judgment of the district court is affirmed.