Malaney v. Cameron.

No. 20,293.

MRS. ROSE L. MALANEY, *Appellant*, V. ALLEN N. CAMERON AND O. C. BROWN, as Administrator, etc., *Appellees*.

SYLLABUS BY THE COURT.

1. ADOPTION — *Consent of Probate Judge — Contract and Conduct of Parties—Property Rights.* Inasmuch as the statutory proceeding for adopting a child includes the consent of the probate judge, no legal adoption can result from the mere contract and conduct of the parties, although under certain circumstances property rights growing out of promises made in that connection may be enforced.

2. SAME—*Contract—Question Suggested.* The question suggested but not determined, whether a contract between the father of a four-year-old girl and a married couple, reciting that he relinquishes to them his rights to her "for to have and claim as their own," is to be interpreted as including a promise of adoption on their part.

3. DEEDS—*Possession—Delivery Presumed.* The presumption of delivery arising from the possession of a deed by a grantee arises even in the absence of evidence that such possession was obtained prior to the death of the grantor.

4. EVIDENCE—*Deed—Possession—Delivery—Presumption.* The evidence held not to overcome the presumption of delivery arising from possession of a deed.

Appeal from Douglas district court; CHARLES A. SMART, judge. Opinion filed July 8, 1916. Affirmed.

*Ord Clingman*, of Lawrence, for the appellant.
*J. B. Larimer*, of Topeka, for the appellees.

The opinion of the court was delivered by

MASON, J.: Noah Cameron died intestate on January 18, 1911, holding the record title to several city lots in Lawrence. Five days later a deed was recorded, which had been signed and acknowledged by him on November 12, 1910, purporting to convey the property to his two sons, Allen N. Cameron and Huber L. Cameron. On June 21, 1913, Rose L. Malaney brought an action against Allen N. Cameron and the administrator of Huber L. Cameron, claiming an interest in the property, and its rents and profits, as an heir of Noah Cameron, by virtue of being his adopted daughter, and asserting that the

deed was inoperative for want of delivery.   Judgment was rendered against her, and she appeals.

The trial court found that there had been no legal adoption, and that the deed had been delivered.   There is no substantial dispute in the evidence.  The plaintiff contends that the established facts show that she was entitled to the rights of an adopted child, and that the grantor died without having delivered the deed.   There can be no reversal unless both these contentions are sustained.

1.  When the plaintiff was about four years old her father, whose wife had left him, entered into a written agreement with Noah Cameron and his wife, in these words:

"Know all men by these presents that I, Loomis J. Beach, party of the first part, and Noah Cameron and Angeline J. Cameron of the second part, that the party of the first part do by these presents relinquish forever to the parties of the second all his rights and claim as father to his daughter Rose L. Beach (age four years, three months and twenty-two days) for to have and claim as their own."

Thereafter the plaintiff lived with the Camerons, was known by their name, and was treated in every respect as their child. No court proceedings of any kind were had, nor did the probate judge give his approval; at least, no showing to that effect was made.   One section of the statute relating to adoption, which has been in effect since 1868, reads as follows:

"Any parent may, with the approval of the probate judge of the county where such parent may reside, first obtained in open court, relinquish all right to his or her minor child or children to any other person or persons desirous of adopting the same, and shall not thereafter exercise any control whatever over such child or children so relinquished; and the person or persons so receiving into his, her or their charge such child or children shall exercise all the rights over the same that they would be entitled to were such child or children the legitimate offspring of said person or persons so receiving them."   (Gen. Stat. 1909, § 5064.)

The succeeding section provides a procedure for a formal order of adoption by the probate court, at the instance of the adopting parent.   This was amended in 1903, but not in any feature here material.   The next section gives the rights of an heir to "minor children adopted as aforesaid."   Whether a legal adoption can result from proceedings had only under the section quoted, or whether an order made under the section immediately following it is necessary to produce that

effect, need not be determined. The consent of the probate judge was in any event necessary to an adoption under the statute, and as this was lacking the statutory procedure was not complied with. A right of inheritance, based upon an artificial relation, is derived wholly from the statute, and can only be created by a substantial compliance with the method there laid down. (*Renz v. Drury*, 57 Kan. 84, 45 Pac. 71.) In this all courts agree. (1 C. J. 1373; 2 Enc. L. & P. 218; 1 R. C. L. 595, 596.)

But while the plaintiff pleaded an actual adoption the argument made in her behalf amounts to a contention that the written agreement already quoted constituted a valid contract to adopt the child, supported by a sufficient consideration, and that in view of the subsequent conduct of the parties a right to inherit must be deemed to have resulted. By the great weight of authority, supported as we think by sound reason, such a contract is enforceable and may be made the basis of a valid claim against the estate of the obligor. (1 C. J. 1376; 2 Enc. L. & P. 245; 1 R. C. L. 617, 618.) In *Horton v. Troll*, 183 Mo. App. 677, 167 S. W. 1081, a judgment was affirmed which declared an oral agreement to adopt a child, when acted upon by the parties, to be an executed deed of adoption, as required by the statute; but that action might have been regarded, as this may, as in effect one for the specific performance of the contract.

2. If in the writing relied upon by the plaintiff Noah Cameron had in so many words agreed that he would make her his heir, or that he would adopt her, the case would probably be brought within the rule stated. Possibly such an agreement may be implied from the recital that her father relinquished to the Camerons his rights to his daughter "for to have and claim as their own." This need not be decided, because of the view taken of the other question presented.

3. The deed in question, after the certificate of acknowledgment had been attached by the notary public, was left in the possession of the grantor. No direct evidence was given as to how it reached the hands of the register of deeds, but as it was delivered to Huber L. Cameron after having been recorded the fair inference is that it had been received from him. He was shown to have been living with his father dur-

ing his last illness. The mere unexplained fact that the deed was in the possession of one of the grantees creates a presumption that there had been a delivery (9 A. & E. Encycl. of L. 159; 4 Enc. of Ev., 158; 8 R. C. L. 999), "which can be overthrown only by clear and convincing evidence" (*Rohr v. Alexander,* 57 Kan. 381, 384, 46 Pac. 699; 4 Enc. of Ev., 160). The circumstance that the possession is not affirmatively shown to have originated prior to the death of the grantor does not defeat the presumption, although of course it may weaken it. (*Blair et al., by Guardian, v. Howell et al.,* 68 Iowa, 619, 28 N. W. 199; *McCarthy v. Colton,* 134 Iowa, 658, 108 N. W. 217; *Simmons v. Simmons,* 78 Ala. 365.)

4. To overcome the *prima facie* showing of delivery these considerations are urged: In a letter written to his son Allen on November 12, 1910, the grantor mentioned that the income · of the property was about fifty dollars a month, and in one written a month later he said: "The real estate is left to you and Huber jointly, and I think after I am gone you had better not dispose of it but keep it as it will be a continual revenue. . . . I will have the rents which will be more than I may need." A witness testified that three weeks before his death he made inquiries concerning local charitable institutions to which he wished to leave some property, and stated that he had fixed his other property as he wanted it to go. The argument is made that a purpose on the part of the grantor to retain title in himself until his death, by keeping control of the deed, is shown, particularly by the expression with reference to the rents, which indicated that he regarded himself as still the owner. To this it is answered that a reliance upon the income of the property during his life is not necessarily inconsistent with a present passing of the title. (*Ross v. Perkins,* 93 Kan. 579, 583, 144 Pac. 1004.) An expectation that his use of the rents would not be interfered with, even in the absence of any agreement or understanding on the subject, would not be strongly persuasive of an intention to have the deed take effect at his death and therefore accomplish what the law requires to be done by will. In the letter written to his son Allen in November he said, "I have made a deed of all my property in Lawrence to you and Huber jointly." In the December letter he said that he had placed $1700 of the proceeds of his personal

property in the bank to Allen's credit, indicating a full relinquishment of title to this amount of ready money. He also mentioned having set aside $100 for the plaintiff. Another witness to whom he spoke concerning the leaving of something to charity testified that he said that "he had already disposed of his other property"—an expression, however, which might apply as well to disposal by will as by deed. A decision that the deed was not delivered would impute to Huber L. Cameron the act of wrongfully taking it from among his father's papers. Upon a consideration of the entire record we conclude that the evidence tends to support rather than to overthrow the presumption of delivery. This conclusion requires an affirmance of the judgment of the trial court, a result which appears to be in accordance with the established rules of law, and which clearly conforms to natural justice; for while on the one hand it would seem harsh to hold that Noah Cameron's mainfest purpose to adopt the plaintiff should be defeated by a failure to comply with the prescribed formalities, on the other an equally technical ruling would follow if the nondelivery of the deed had been proven, for then his plain intention to exercise his undeniable right of vesting title to his real estate at his death in his sons would be frustrated merely because he chose a method of showing his desire which was perfectly intelligible, but not effective for want of the formality the law requires in the making of a will.

The judgment is affirmed.