No. 37,663

EDNA BRADBURY, *Appellant,* v. DUTCH WISE et al., *Appellees.*

No. 37,664

EDNA BRADBURY, *Appellant,* v. EUNICE MEACHAM et al., *Appelles.*

(208 P. 2d 209)

 Opinion filed
July 9, 1949. 

*P. E. Nulton,* of Pittsburg, and *Luther Adamson,* of Kansas City, Mo., both argued the cause, and *R. L. Letton,* of Pittsburg, was with them on the briefs for the appellant.

*Douglas G. Hudson,* of Fort Scott, and *George F. Beezley,* of Girard, argued the cause, and *Douglas Hudson* and *Howard Hudson,* both of Fort Scott, were with them on the briefs for the appellees.

The opinion of the court was delivered by

PARKER, J.: Edna Bradbury, claiming to be the owner of three tracts of land located in Crawford county under and by virtue of as many quitclaim deeds executed by the owner of such property in his lifetime, brought two actions in the district court of such county against the heirs-at-law of her alleged grantor and his administrator with the will annexed to quiet her title in the lands described in the instruments on which she founded her causes of actions. By appropriate pleadings her right, title, and interest in the property was challenged and in due time the two cases came on for trial with all parties to the two actions agreeing that the testimony adduced should be considered by the trial court as the evidence in both cases. At the conclusion of the joint trials separate judgments were rendered in which the deeds relied on by Mrs. Bradbury in each case were canceled and set aside and the title to the real estate therein described, excepting such interest therein as the parties might be able to establish as heirs or devisees of Adam H. Adamson, deceased, was quieted in the name of the administrator with the will annexed of the estate of such deceased person. Mrs. Bradbury then filed motions for a new trial. When these motions were overruled she perfected appeals in both cases, since consolidated in this court, and now seeks a reversal of the two judgments rendered against her.

Before proceeding further it should perhaps be stated, as will presently be disclosed, that other issues pertaining to the rights of some of the defendants in each of the two cases under and by virtue of certain warranty deeds in which they were also named as grantees of the involved real estate were settled and determined by the trial

court adversely to their interests by findings to the effect such deeds had never been delivered. Likewise added that reference to those issues has purposely been ommitted in the foregoing statement for the reason no complaint is made to portions of the judgments relating to them and they are not subject to appellate review.

The lengthy pleadings filed by the respective parties are not in question and no useful purpose would be served by detailing their allegations. It suffices to say that so far as appellate review is concerned the all decisive question they raise is whether there was a valid and effectual delivery to plaintiff, by Adam H. Adamson in his lifetime, of the quitclaim deeds on which she bases her right to the relief sought in the two actions she instituted in the district court.

Pursuant to requests therefore the trial court made findings of fact and conclusions of law on which it based its two judgments. The findings of fact in No. 37,663, although some of them are challenged and require consideration presently, fully disclose the factual situation on which the trial court's judgment in that case was based. Except for the parties and a description of the real estate involved they are substantially the same as those made in No. 37,664 and will serve to reveal the factual situation on which its judgment depends. On that account such findings will be quoted at length. They read:

"1. The plaintiff, Edna Bradbury, is the stepdaughter of Adam H. Adamson, who was also known as A. H. Adamson.

"2. Adam H. Adamson died in Crawford County, Kansas, on October 21, 1947, leaving as his only heirs at law the above named defendants, Walter Adamson and G. V. Adamson, his brothers, Mrs. Lydia Wise, Mrs. Ruth Drummond, Mrs. Jessie Capps and Mrs. Eunice Meacham, his sisters and his niece, Elva Scott.

"3. That the defendant, J. P. Hinkle, is the duly appointed, qualified and acting administrator with will annexed of the estate of Adam H. Adamson, deceased.

"4. That the said Adam H. Adamson and the mother of plaintiff were married in 1912 when plaintiff was about eleven years of age. That after her mother's marriage to Adam H. Adamson, the plaintiff lived with her mother and Adamson in Arcadia, Kansas, until plaintiff's marriage to Fred Bradbury on May 20, 1920. Adam H. Adamson was a doctor and lived in Arcadia, Kansas, until his death.

"After her mother's marriage to Dr. Adamson, plaintiff went under the name of Edna Adamson and was married under that name at Arcadia, Kansas. Dr. Adamson had no children of his own but treated the plaintiff as a daughter. After plaintiff's marriage to Fred Bradbury, the plaintiff and her husband lived with the Adamsons for a few months. Plaintiff and her husband

moved to Kansas City, Missouri, about three years after their marriage where her husband was employed until they moved back to Arcadia, Kansas, in July, 1946.

"Dr. Adamson and his wife frequently visited the plaintiff in Kansas City.

"5. The court further finds that plaintiff's mother died in Arcadia, Kansas, on January 7, 1940. Plaintiff was living in Kansas City at that time, but plaintiff and her husband came to Arcadia before her death and remained at the home of Dr. Adamson after the funeral for several days.

"6. The court further finds that on the afternoon of January 17, 1940, ten days after the death of plaintiff's mother, Mrs. Adamson, Adam H. Adamson signed and acknowledged a Quit Claim Deed, in which the plaintiff, Edna Bradbury, was named grantee, to the following described real estate situated in Crawford County, Kansas, to-wit:

"The northwest Quarter (NW¼) of the Northwest Quarter (NW¼) and the South Half (S½) of the said Northwest Quarter (NW¼) all in Section Thirty-five (35), Township Twenty-seven (27), Range Twenty-five (25) East of the Sixth Principal Meridian, the same being 120 acres, more or less,

"which Quit Claim Deed was filed for record and recorded in Book 198 on page 131 in the office of the Register of Deeds of Crawford County, Kansas, on October 23, 1947.

"That at the same time and on January 17, 1940, the said Adam H. Adamson signed and acknowledged a certain other Quit Claim Deed, in which the plaintiff, Edna Bradbury was named grantee, to the real estate described in the 'Second cause of action' in plaintiff's first amended petition filed herein, which Quit Claim Deed was filed for record in the office of the Register of Deeds of Crawford County, Kansas, on October 27, 1947, and recorded in Book 198 on page 179 in said office.

"That at the same time and on January 17, 1940, the said Adam·H. Adamson signed and acknowledged a certain other Quit Claim Deed, in which the plaintiff, Edna Bradbury, was named grantee, to certain real estate described therein, which said deed was filed for record in the office of the Register of Deeds of Crawford County, Kansas, on October 23, 1947, and recorded in Book 198 on page 133 in said office.

"That these three Quit Claim Deeds were prepared by G. W. Corporon, a lawyer and Notary Public, at his office across the street from Dr. Adamson's office in Arcadia, Kansas. That the grantor in said deeds, Adam H. Adamson, signed and acknowledged the execution of said deeds before the said G. W. Corporon as Notary Public on January 17, 1940.

"He also at the time told the plaintiff that he was changing the beneficiary in a $5,000.00 policy of life insurance, which he held in the Occidental Insurance Company, and did change the policy making the plaintiff, Edna Bradbury, the beneficiary. He also told her he was going to change some bonds that were made payable to himself and Edna's mother.

"7. The court finds that subsequent to September 17, 1940, on approximately three occasions, Adam H. Adamson said to Berney Sheets, a tenant on one of the properties, when Sheets attempted to buy the farm from Dr. Adamson, that he would not sell the farm, that it was his ace in the hole, and that he had given it or was going to give it to Edna and Freddie.

"8. The court further finds that in January, 1940, after the death of plain-

tiff's mother, Dr. Adamson opened a joint account in the name of 'A. H. Adamson or Edna Bradbury' in The Home State Bank at Arcadia, Kansas. That numerous deposits were made in this account and all deposits were made in the name of 'A. H. Adamson or Edna Bradbury.' This joint account remained in the bank all the time after January 29, 1940, until after Dr. Adamson died, and then Edna Bradbury withdrew the money in said account after Dr. Adamson's death by her check.

"The court further finds that Dr. Adamson told Charles Glenn Fowler, Cashier of The Home State Bank, Arcadia, that if anything happened to him or he got sick, Mrs. Bradbury could come in and check on the joint account. During the lifetime of Dr. Adamson neither Mr. nor Mrs. Bradbury ever made any deposits or any withdrawals on the account.

"9. The court further finds that on October 16, 1947, the deceased signed and acknowledged a Warranty Deed to the real estate described in finding of fact No. 6, *supra*, in which Dr. Adamson's sister Lydia Wise, and her husband, Dutch Wise, were named grantees for life with remainder to John William Adamson.

"10. The court further finds that on or about October 16, 1947, the deceased, Adam H. Adamson, signed and acknowledged a Warranty Deed to the real estate described in the second cause of action in plaintiff's first amended petition, and in Exhibit B attached thereto, in which his sister, Lydia Wise and her husband, Dutch Wise, were named grantees of a life estate with remainder to John William Adamson, a nephew of Dr. Adamson.

"11. The court further finds that there was no valid delivery of the Warranty Deeds above described. The court finds that after the above described Warranty Deeds to Lydia and Dutch Wise has been signed and acknowledged by Adam H. Adamson, he told other persons that he had made the deeds and that he now had things the way he wanted them.

"12. The court further finds that on or about July 31, 1942, the deceased duly executed and acknowledged a will, disposing of all of his property, both real and personal, which has not been found.

"13. The court further finds that up until the time of his death, the deceased exercised full dominion over the above described real estate. He collected all rents and profits, paid all the taxes, handled any and all business with tenants, including repairs and division of crops. He executed and signed leases of the real estate as owner. Neither the Plaintiff, Edna Bradbury, nor her husband ever reported the real estate for income tax purposes, nor reported any income therefrom. During the lifetime of the deceased they collected no rents or profits, paid no taxes on the property, and had nothing whatever to do with the leasing or operation of the property. The deceased collected benefits from farm agencies of the Federal Government as owner of the real estate above described. Also, as owner, he bought insurance on the buildings located on this real estate and paid the premiums.

"14. The court further finds that the plaintiff did not cause the Quit Claim Deeds to her, signed in 1940, to be recorded until October 23, 1947, two days after the death of the grantor.

"15. The court further finds that the plaintiff lived in a home immediately adjoining that of the deceased, and was present at the time of the death of the

deceased, so that she had opportunity to and did go through the personal effects and papers of the deceased.

"16. From all of the above circumstances the court finds the fact to be that the Quit Claim Deeds described in plaintiff's first amended petition and in Exhibits A and B attached thereto, which were signed and acknowledged by the deceased, Adam H. Adamson, on January 17, 1940, were never delivered during the lifetime of the deceased, either to the plaintiff or to any other person."

Along with the foregoing findings the court returned the following conclusions of law:

"1. The court concludes that there was never any valid or effectual delivery of the Quit Claim Deeds described in plaintiff's first amended petition and in Exhibits A and B attached thereto, either to the plaintiff or to any other person; that the said Quit Claim Deeds to the plaintiff are null and void and of no force and effect, and should be cancelled, set aside and held of no force and effect; and that judgment should therefore be entered generally in favor of the defendants.

"2. The court further concludes that there was no valid or effectual delivery of the Warranty Deeds to Lydia Wise and her husband, Dutch Wise, either to the said defendants or to any other person, and that the said Warranty Deeds are null and void and of no force and effect."

For informative purposes it should be stated that similar conclusions of law, except for the fact they have reference to the real estate and the parties therein involved, were made by the trial court in case No. 37,664.

Having fully set forth the prevailing factual situations and the nature of the judgments in each of the two cases in the court below we now turn to consideration of the errors assigned by appellant and urged by her as grounds for a reversal of such judgments. As we do so it will be noted that throughout the remainder of this opinion the issues raised by the parties can and will be disposed of without reference to multiple proceedings or judgments and in the same manner as if this appeal involved a single action.

At the outset it will be helpful to state a few fundamental principles governing determination of the questions about to be considered.

One of such rules, well-established in this jurisdiction, is that before a deed can operate as a valid transfer of title there must be a delivery of the instrument which becomes effective during the life of the grantor named therein (*Wuester v. Folin,* 60 Kan. 334, 56 Pac. 490; *Burgin v. Newman,* 160 Kan. 592, 164 P. 2d 119). However, it is also the rule that possession by a grantee of a deed absolute in form is prima facie evidence of delivery which can be

overthrown only by clear and convincing evidence and that the burden of showing nondelivery is upon the party who questions the delivery (*Burgin v. Newman,* supra).

Another rule is that an issue of delivery or nondelivery of a deed depends largely upon intention and when the evidence on that question is in controversy it presents a question of fact to be determined by a jury or the trial court as the case may be. (*Burch v. Burget,* 130 Kan. 243, 285 Pac. 574; *Sample v. Reed,* 130 Kan. 524, 287 Pac. 614.) When the facts are not controverted the issue of delivery must be determined by the trial court as a question of law (*Hoard v. Jones,* 119 Kan. 138, 237 Pac. 888).

Still another is that on appellate review where trial court findings of fact are challenged such findings will not be disturbed if supported by substantial competent evidence and in determining that question this court does not weigh the evidence but is concerned only with whether it supports or tends to support the findings. (*Pearcy v. Williams,* 163 Kan. 439, 183 P. 2d 243; *Wilson v. Holm,* 164 Kan. 229, 188 P. 2d 899.) Notwithstanding the rule just stated whenever the question whether findings of a trial court are supported by substantial evidence is submitted to this court it is presented with a question of law as distinguished from a question of fact and will examine the record to see if there is any such evidence to sustain the findings (*Hush v. Reeder,* 150 Kan. 567, 577, 95 P. 2d 313; *Gallagher v. Menges & Mange Const. Co.,* 146 Kan. 506, 72 P. 2d 79).

In the court below appellant moved to set aside certain of the findings of fact together with conclusion of law No. 1 and now insists the overruling of that motion was error.

We shall first give consideration to the factual findings complained of on which over-all finding No. 16 and the conclusion of law just mentioned are based. It is first urged that finding No. 7 to the effect Mr. Adamson had told Berney Sheets "that he had given it (the land) or was going to give it to Edna and Freddie," is contrary to the evidence and not supported by any evidence. It is true Sheets testified positively that on two or three occasions Adamson had told him he had given the land to the parties just mentioned. However, on cross-examination he was asked if he had not told one of appellees' counsel that Mr. Adamson had told him he was *going* to give it to Edna and Freddie. In response to such question Sheets answered, "He might not have used the exact

words, but that was close to it." The trial court had an opportunity to observe the attitude of the witness just mentioned, form its own opinion as to the truthfulness of his answers and draw any reasonable inferences therefrom. No doubt, in view of the quoted answer, there was some question in its mind as to the import to be given his testimony on the particular point in question. In such a situation we cannot say the finding in its present form is contrary to the evidence or unsupported by any testimony whatsoever.

The last paragraph of finding No.. 8 is also challenged on identical grounds. There is no merit in this claim. The finding is justified by the testimony of Fowler, the cashier and managing agent of the bank, who stated he had no knowledge of appellant writing a check on the joint account or of her ever having made a deposit to such account. The fact is appellant, who appeared as a witness in her own behalf, made no attempt to deny the banker's statement and her own husband, on cross-examination, admitted she had never written a check on the account until after Adamson's death.

A portion of finding No. 11 to the effect that after signing and acknowledging the warranty deeds to Lydia and Dutch Wise, Mr. Adamson had told other persons he had made such deeds and that he now had things the way he wanted is attacked on the ground it is contrary to the evidence. The record discloses Adamson had told at least three, or perhaps more, persons he had made the deeds. It reveals he told Mr. Skidmore, manager of the hardware store, that he hoped what he had done took care of everything and that he had fixed it up so the lawyers would not get his property. It also shows, that after telling Mr. Adams, the manager of the town garage, he had deeded the land to his sisters, and specifically mentioning one of the tracts, he said this is one time the Adamson sisters get what is coming to them. In the face of all these statements we do not believe the complaint made against finding 11 can be upheld.

The portion of finding No. 13 stating Mr. Adamson bought insurance on the buildings located on the involved real estate is also questioned. On examination of the record we find that Mr. Moonahan, an insurance agent, testified he wrote insurance for Mr. Adamson on buildings located on a farm one mile west and five miles south of Arcadia and on another farm one mile west and a mile north of the same town. That testimony more than suffices to uphold the finding.

Appellant's principal assignment of error, as heretofore indicated, attacks finding No. 16 and conclusion of law No. 1. She asserts the trial court erred in finding that the three deeds described in her amended petition were never delivered to her during the lifetime of Mr. Adamson, the grantor therein, for the reason such finding, and we might add the conclusion of law with respect thereto, is not based on any substantial competent evidence.

Thus, in view of what has been heretofore stated and with the findings approved, it appears the basic foundation on which the last error assigned depends is that no one of the facts set forth in such finding or all of them when considered together are substantial enough in character to warrant the trial court's conclusion that even though the deeds in question were in the possession of appellant they had never been delivered to her in Mr. Adamson's lifetime and hence conveyed no title. Decision of this question, as we have heretofore indicated, is purely a question of law.

In support of the foregoing contention much stress is placed by appellant on the rule a deed in possession can only be overthrown by clear and convincing evidence. That we concede. Even so it has application to the trial court and the function of this court on appellate review is limited to ascertaining if there is any substantial evidence to sustain the decision of the tribunal authorized to ascertain the controverted issues of fact. Long ago in *Klein v. Blackshere*, 113 Kan. 539, 541, 215 Pac. 315, we said:

"The rule that certain matters require more than a mere preponderance of evidence for their proof is one to be applied by the trial court and 'where the findings are supported by competent and substantial testimony it will be presumed that the district court applied the proper test in weighing the evidence and finding of facts.' (*Woodell v. Allbrecht*, 80 Kan. 736, 104 Pac. 559, Syl.) 'Even in a criminal case, where the guilt of the defendant must be proven beyond a reasonable doubt, a verdict supported by substantial testimony is conclusive upon the reviewing court.' (*Leverton v. Rork*, 74 Kan. 832, 85 Pac. 800.)"

For some of our decisions to the same effect see *Hoover v. Hopkins*, 122 Kan. 65, 251 Pac. 411; *Shoemaker v. Davis*, 146 Kan. 909, 915, 73 P. 2d 1043; *Kull v. Pearl*, 147 Kan. 329, 337, 76 P. 2d 790; *Klusmire v. Dixon*, 150 Kan. 871, 875, 96 P. 2d 634; *Jones v. Jones*, 161 Kan. 284, 296, 167 P. 2d 634 and *Sanders v. Visser*, 165 Kan. 336, 339, 194 P. 2d 511.

Appellant insists *Rohr v. Alexander*, 57 Kan. 381, 46 Pac. 699; *Norton v. Collins*, 81 Kan. 33, 105 Pac. 26; *Zeitlow v. Zeitlow*, 84

Kan. 713, 115 Pac. 573; *Ross v. Perkins,* 93 Kan. 579, 144 Pac. 1004; *Malaney v. Cameron,* 98 Kan. 620, 159 Pac. 19; *Elliott v. Hoffhine,* 97 Kan. 26, 154 Pac. 225 and *Burgin v. Newman,* 160 Kan. 592, 164 P. 2d 119, uphold her portion on this assignment of error. We are not disposed to detail the evidence in the foregoing cases or point out the particulars in which the facts therein involved are distinguishable from those in the case at bar. It suffices to say they all deal with the sufficiency of evidence to uphold trial court findings to the effect, deeds were delivered and that none of them goes so far as to be susceptible of a construction the facts found to exist in the instant case do not warrant a conclusion the deeds involved were never delivered.

Another decision cited is *Small v. Small,* 99 Kan. 321, 161 Pac. 598. It was an action to set aside three deeds to real estate on grounds of nondelivery. In that action a demurrer was sustained to evidence of the plaintiff who had married the grantor six years after he had executed a deed to the real estate and who, after the marriage, had executed two quitclaim deeds to that same property to the grantees named in the deed executed by her husband. Moreover the plaintiff, who testified in her own behalf, would not say when questioned that she ever believed her husband owned the property. It is true, that in such action as appellant points out, there was some unsatisfactory evidence touching exercise of proprietorship by the original grantor over the land in question and that in the opinion the evidence is commented upon as merely furnishing a basis for speculation. That statement must, however, be considered as made in the light of testimony of the character there involved and is not to be regarded as authority for a conclusion that acts evidencing ownership of real estate on the part of a decedent are not entitled to weight in determining whether he had parted with his title in his life time by delivery of a deed.

*Hoard v. Jones,* 119 Kan. 138, 237 Pac. 888, is also relied on. There a trial court's finding that a deed had not been delivered was set aside by this court on appellate review. That this case does not sustain appellant's position and is clearly distinguishable is evidenced by the statement appearing on page 156 of its opinion where it is said:

". . . The court, in reaching the conclusion the deed had not been delivered, placed much stress upon the fact that William Hoard continued to use and occupy the premises during his life, and received the rents and paid the taxes and insurance thereon. In view of the fact that by the specific

terms of the deed he reserved the use and income of the property during his life and agreed to pay the taxes thereon, no force should have been given to that circumstance. This should have been given the opposite construction from that placed upon it by the court. The rule of law is that in deed of gifts to children or relatives, the reservation by the grantor of the use of the property during his lifetime is evidence of an intention to deliver the instrument before his death, for there could be no purpose in placing such a reservation in the deed if it were not delivered in his lifetime. (*Young v. Mc-Williams*, 75 Kan. 243, 250, 89 Pac. 12, and cases there cited; *Zeitlow v. Zeitlow*, 84 Kan. 713, 717, 115 Pac. 573.)"

More in point than any of the cases heretofore cited are *Stanley v. Martin*, 137 Kan. 894, 22 P. 2d 951 and *Staats v. Staats*, 148 Kan. 808, 84 P. 2d 842, where findings of fact, far less extensive than those here involved, were approved and held to sustain judgments holding deeds in controversy had never been delivered.

In the Stanley case we held:

". . . Under the circumstances stated in the opinion, the oral and written statements of the mother touching her sole ownership of the properties and that she was receiving the income therefrom, made by her long after the deeds were dated and acknowledged by her, and likewise made by her for the purpose of procuring extensions of credit, were competent on the issue of fact whether the deeds were delivered to the grantees in the mother's lifetime, . . ." (Syl.)

At page 810 of the opinion in the Staats case we said:

"However, we think the evidence for plaintiff, including the potent significance that should be given to the many years' exercise of the prerogatives of ownership by Abram after the deed was executed, down almost to the end of his life, and including the testimony of plaintiff (to which the trial court apparently gave full credence) touching the purpose for which the deed was executed—all these probative details made a prima facie case for plaintiff that no regular, valid delivery of the deed had been made to Lature Staats or to any of the grantees during the lifetime of Abram. No error is made to appear in the trial court's ruling on the demurrer."

It is true, as appellant insists, that appellant's husband testified that the deeds in question were delivered to her by Mr. Adamson and that two of her friends, who were her neighbors when she lived for a time in Kansas City, Mo., testified that such deeds were seen by them in her possession on several occasions. It is likewise true, as she argues, that this was the only direct testimony before the trial court with respect to delivery and possession of such instruments. However, such a concession does not mean that the trial court was bound to believe either appellant's husband or her friends. As trier of the facts it had a right to disbelieve and entirely disregard their testimony. We must assume it exercised that pre-

rogative for in the very nature of its findings and judgment there inheres the conclusion their testimony was not given credence. Once it is concluded appellant's evidence as to delivery was properly rejected, and we are compelled to so regard it, we have little difficulty in concluding that under the decisions heretofore referred to the extensive findings of the trial court, which need not be here repeated because they are quoted *in toto*, are substantial in character and uphold its decision the deeds were never delivered.

Finally appellant charges the trial court erred in overruling her motion for a new trial. In giving this contention consideration we shall not refer to grounds of the motion already disposed of or those which are neither briefed nor argued.

First it is urged the court erred in admitting a photostatic copy of Mr. Adamson's will for the reason it did not prove or tend to prove the delivery of the deeds in question and next contended there was error in admitting testimony of appellees' witness Corporon with reference to a will drawn by him for Mr. Adamson about July 31, 1942. Assuming, without conceding, there is any merit in these contentions the record here does not require their determination. Appellant did not move to strike out the evidence of which she now complains. Under such circumstances there is no presumption it was considered or entered into the final decision of the trial court (*In re Estate of Walker*, 160 Kan. 461, 163 P. 2d 359 and *In re Estate of Wittman*, 161 Kan. 398, 168 P. 2d 541).

Another contention is based upon the premise the burden of showing nondelivery of the deeds was upon the appellees whereas in the trial of the action the appellant actually assumed such burden. This claim has no merit. When at a trial a party voluntarily assumes the burden of proof it is not cause for the reversal by this court of a judgment rendered against him that the burden of proof was cast by the pleadings on the other party (*Parker v. Richolson*, 46 Kan. 283, 26 Pac. 729). Moreover, this case was tried by the court and we must assume that it knew on whom the burden rested and that in resolving the issues it was placed where it belonged.

Appellant fails, and we are not disposed, to labor her claim that a new trial should have been granted on the ground of newly discovered evidence. The witnesses produced were new but the character of their evidence was not. It was purely cumulative. Besides there was no showing of diligence on the part of appellant in obtaining and producing the testimony at the trial. New trials

are not granted under such conditions and circumstances (*Bond v. Bond*, 154 Kan. 358, 118 P. 2d 549).

The judgments rendered by the trial court in case No. 37,663 and case No. 37,664, are each affirmed.