FRANCES V. YOUNG *et al.* v. NELLIE MCWILLIAMS *et al.*

No. 14,887   (89 Pac. 12.)

SYLLABUS BY THE COURT.

1. PRACTICE, DISTRICT COURT—*Petition for Partition Amended to Include Ejectment after Change of Venue.* Where the petition in a suit for partition shows the defendant to be in the exclusive occupancy of the premises involved the court of the county to which the case is transferred on change of venue may permit it to be amended so as to state also a cause of action in ejectment.

2. CONVEYANCES—*Deed in Escrow—Delivery after Death—Intention of Grantor.* Evidence that the owner of land executed a deed to his daughter, reserving a life-interest in himself, and stated his purpose to be to deposit it with a third person to be turned over to the beneficiary upon his death, and that he did deposit it with such person, who handed it to the grantee after the grantor's death, may be held sufficient to establish an effective delivery, notwithstanding no further show-

| | |
|---|---|
| 75 | 243 |
| 75 | 315 |
| 75 | 243 |
| 76 | 804 |
| 76 | 805 |
| 75 | 243 |
| e81 | 36 |
| 81 | 37 |

ing is made as to what instructions were given to the deposi- tary.

3. ——— *Control of Deed by Grantor.* The testimony of such a depositary examined and held not to require the conclusion that the grantor retained any control over the deed.

Error from Neosho district court; LEANDER STILL- WELL, judge. Opinion filed February 9, 1907. Re- versed.

*McClain & Apt,* for plaintiffs in error.

*Curran & Curran,* and *E. Q. Stilwell,* for defendants in error; *Lamb & Hogueland,* of counsel.

The opinion of the court was delivered by

MASON, J.: In 1900 J. R. Young executed a deed for lands in Allen county, naming as grantee his daughter, Docia A. Northrup. It was placed in the hands of George A. Bowlus, a banker. In 1902 Young died in- testate, leaving as his heirs, besides this daughter, his widow (Frances V. Young, the mother of Mrs. North- rup), and several children and grandchildren by a for- mer marriage. After his death the deed came into the hands of Mrs. Northrup, who took possession of the property. Several of the heirs began a suit in Allen county to set aside the deed and partition the property. A change of venue was taken to Neosho county. There by amendment the petition was made to cover eject- ment as well. Upon a trial in which no oral testimony was given, the case being submitted upon depositions supplemented by an agreed statement of facts, judg- ment was rendered setting aside the deed and dividing the property, from which the grantee prosecutes error.

Several complaints are made of rulings relating to the pleadings. None of these is found to be well taken, and only one is thought to require special mention. It is claimed that because ejectment is a local action the court of the county to which the change of venue was taken had no jurisdiction to permit the petition to be so amended as to make it one for the possession as well

as for the partition of the property. The case of *Fields v. Maloney*, 78 Mo. 172, supports this contention. This court, however, has already held, in *Hazen v. Webb*, 65 Kan. 38, 68 Pac. 1096, 93 Am. St. Rep. 276, that "a court to which a cause is properly removed by change of venue acquires jurisdiction of the cause and subject-matter coextensive with that of the court from which the venue was removed, and may inquire into anything connected with the subject-matter of the action and render any judgment which might have been rendered by the court in which the case originated." (Syllabus.) Here the matter pertinent to ejectment was incorporated in the petition by amendment expressly in order that the statement of a cause of action for partition might be complete, and the case is therefore fully within the rule quoted.

The only remaining question is whether the evidence sustained the judgment. This depends upon whether it showed a sufficient delivery of the deed. Where one who has executed a deed retains it in his own possession, with the intention that it shall become operative upon his death, no conveyance is effected. He dies in the full ownership of the property and the title passes to his heirs or devisees. (*Stone v. French*, 37 Kan. 145, 14 Pac. 530, 1 Am. St. Rep. 237; 13 Cyc. 569, ¶ 4a.) But where he deposits it with a third person, to be turned over upon his death to the grantee, this is a good delivery if he thereby surrenders all control over it, but not otherwise. (13 Cyc. 569; 9 A. & E. Encycl. of L. 157; 2 A. & E. Encycl. of L. [Supp.] 394; *Grilley v. Atkins*, 78 Conn. 380, 62 Atl. 337, 4 L. R. A., n. s., 816, and note.) In such a case the title is deemed to vest at once in the grantee, only the enjoyment of the property being postponed, a condition which the grantor is competent to create and which arises whenever a purpose on his part to establish it is sufficiently manifested, whether by express instructions to the depositary or otherwise.

The important inquiry here, therefore, is whether

J. R. Young gave the deed to Bowlus, the custodian, intending thereby to part with the title to the property. If he retained control of the deed the situation was substantially the same as though he had held it in his own possession. The learned trial judge probably concluded from the deposition of Bowlus that such was the case. All the evidence being in writing, we are not permitted to accept that conclusion without an independent examination, and upon such examination we find ourselves unable to agree to it.

Bowlus did indeed say that the only instructions he had with reference to the matter were general, covering any papers of J. R. Young that might be in his hands when death should overtake their owner, and were to the effect that he should deliver all such documents to the widow. Standing alone this would indicate that he held the deed merely for safe-keeping, and would justify, and indeed compel, the decision that was made. But its force is so far impaired by other statements of the witness that in the judgment of this court it is completely nullified. He said later that other instructions might have been given which he had forgotten, and that he was unable to say whether or not he had received any special instructions with regard to this deed. Ordinarily such qualifications would affect only the weight to be given to the prior testimony, and might be of little importance even in that aspect, for in such a matter no witness can do more than give his best recollection, and the positiveness with which this is expressed is by no means a fair measure of its accuracy. But we are compelled to believe from a careful consideration of the whole of Bowlus's evidence that he had absolutely forgotten all about the deed. In his examination in chief, as a witness of the plaintiffs, he testified that he believed that he had never seen the deed until he found it among the other papers in his charge after the death of J. R. Young; that if he had ever seen it before that time the circumstance had escaped his recollection. Upon cross-examination his at-

tention was called to the fact that the deed itself, and the envelope in which it had been enclosed, were indorsed in his own handwriting, with memoranda indicating its character, and he then stated that he believed these indorsements to have been made at the time it was left with him. This statement, however, appears to have been based upon an inference drawn from the known facts rather than to have been the result of his memory of the transaction being refreshed by his inspection of the document. The condition of his mind is illustrated by these extracts, the first and second from his cross-examination, and the third from the redirect:

(1) "Ques. Then this deed and envelope enclosing it deposited were left here under a little different circumstances from what his other, general, ordinary run of papers were? Ans. Since seeing this address on here—but, gentlemen, this is not positive, but my recollection is that when the deed was left—I don't know who drew that deed any more or anything about it, but it seems to me it was Mr. Campbell, I will not be sure—that whoever it was came in with him, but that is not absolute, and asked me to make an indorsement of what it contained. But of course I am not absolutely positive. There must have been some reason why I would put that on there.

"Q. Now, as a matter of fact, you had forgotten that this deed was among those papers at the time after his death you were looking at them? A. I certainly had forgotten."

(2) "Ques. Would not the manner in which this was enclosed in an envelope and indorsements made on it as to what it was, and the parties and all that, knowing his manner of transacting business, I will ask you to state whether or not it would not indicate to your mind that there were some special instructions connected with that deed when it was left there? Ans. That would just have to be by inference.

"Q. That is just what I am asking? A. I would not want to say positively about that because it seems to me that all the instructions I had, and those were simply verbal, at his death I should deliver all papers to Mrs. Young.

"Q. He never asked you to indorse any other papers

particularly, did he? A. I don't know as he asked me to indorse that.

"Q. You did indorse it? A. I did undoubtedly. That is my writing.

"Q. Here is the idea. I take it that the procedure being pursued then from that in leaving other papers generally that it was a special matter, and the circumstances surrounding it at that time, it would indicate to you that there were some special instructions other than these general oral instructions? A. I know what you mean, but I am unable to say whether he gave any special instructions or not. I am unable to say.

"Q. You don't know whether he did or not? A. No, sir; I don't.

"Q. And from the indorsement and so on there is nothing to indicate to you whether or not there is a likelihood that there were? A. I could not tell from the indorsement. It is not explicit if he made any."

(3) "Ques. You may state, Mr. Bowlus, if you remember positively when this writing, reading as follows 'J. R. Young, deed enclosed, Docia A. Northrup,' written on an envelope attached to the stipulation filed in this case, marked 'Exhibit B,' was put on this envelope. Ans. I presume it was put there at the time he enclosed the deed and left it here.

"Q. Do you remember that as a positive fact? A. No, sir; that is my presumption.

"Q. You may state if you remember as a positive fact that this deed was deposited with any different circumstances or instructions than any other paper deposited with you by J. R. Young, deceased. A. Well, if it was I cannot call to mind now.

"Q. You may state if you remember positively if there was a request of any kind by J. R. Young, deceased, that an indorsement should be made on the envelope. A. Not that I can call to mind.

"Q. You may state if you remember if the deed was enclosed in an envelope when it was brought to the bank by J. R. Young, deceased. A. From that inscription on there I presume I just enclosed it and sealed it up and made that indorsement. I see it is the register of deeds'—Fowler's—envelope.

"Q. Do you remember positively of your own knowledge, and you may state how this deed was brought to you by J. R. Young, deceased? A. I am unable to say positively, but I presume he brought it along with this

envelope.  Of course, I often had envelopes here of Fowler's myself—often had, and instead of taking up one of ours, which was generally stamped, I may have just gone in there—you probably will find some there now of those old envelopes—and taken it out and put the deed in.  I am unable to state positively.

"Q.  You may state, if you remember, whether this deed was brought alone or with other papers belonging to J. R. Young, deceased.  A.  Well, I am unable to state absolutely how it was brought, whether he just brought it separately and then put it in with his other papers, or whether he brought it along with other papers—I could not say."

We interpret the testimony of Bowlus as that of a conscientious witness who has no actual recollection of what took place when the deed was left with him, but who in a natural desire to aid in arriving at the truth of the matter gives an opinion regarding it which is founded on his understanding of what was to be done with the decedent's papers generally.  So interpreted it is without probative effect, and leaves the situation precisely as though he had not been called to the stand. The character of the transaction must therefore be determined from the other evidence and from the attendant circumstances.  Mrs. Young testified in substance that at the time of the execution of the deed her husband stated that it was to be placed in the bank to be delivered after his death to the grantee by the custodian. The agreed statement shows that it was immediately deposited with Bowlus, who after the death of Young handed it to Mrs. Northrup.  Mrs. Young said that he gave it to her and told her to hand it to her daughter, which is the same thing in effect.  Bowlus himself merely said that he delivered it to Mrs. Young, but if this is to be regarded as a contradiction of her statement it is not important, for the stipulation as to the fact made by the parties of course controls.

"The transaction was in the nature of a voluntary settlement, and much more is presumed in favor of the delivery of a deed as a voluntary settlement than in an ordinary case of bargain and sale. . . . This be-

cause the relationship of the parties and the confidence and affectionate regard that exist between them are motives which reasonably induce such conveyances to be made." (*Thompson v. Calhoun,* 216 Ill. 161, 164, 74 N. E. 775. See, to the same effect, 12 A. & E. Encycl. of L. 877; *St. Clair v. Marquell,* 161 Ind. 56, 67 N. E. 693; *Colee v. Colee et al.,* 122 Ind. 109, 23 N. E. 687, 17 Am. St. Rep. 345; *Rumsey v. Otis,* 133 Mo. 85, 34 S. W. 551.)

It was shown that Young conveyed other property to other heirs, a circumstance which sheds some light upon his probable intentions with respect to this. His purpose is still further illuminated by the fact that the deed in terms reserved to the grantor the right to the use and income of the property during his life. As was said of a similar situation in *Ball v. Foreman,* 37 Ohio St. 132:

"Again, in each of the deeds, he was careful to reserve a life-estate in himself, postponing the enjoyment in possession of the interest conveyed until after his decease. If the grantor intended no present interest to vest in the grantees, why make this reservation? If the right of property was not to vest until the right of possession attached, and both were intended to be postponed until after his death, the reservation in the deed of the right of occupancy during the life of the grantor was an act wholly without efficacy or effect. How can a reservation be made where no estate is granted? How can a life-estate be reserved by the grantor if the grant does not take effect until he dies?

"On the other hand, the act of reserving a life-estate admits of a very reasonable explanation on the theory that the grantor intended the delivery to operate as a conveyance of a present estate to be enjoyed in the future, as in such case it is held that where the grantee obtains the deed from the trustee before the event occurs upon which the second delivery was to be made the grantor cannot avoid the deed by a plea of *non est factum,* whether generally or specially pleaded. *Wheelwright v. Wheelwright,* 2 Mass. 452, 3 Am. Dec. 66.

"Hence the reservation in the deeds of the right to control the possession and to receive the rents and profits was a safe-guard against any controversy con-

cerning the use, in case the deeds fell into the hands of the grantees prior to the death of the grantor." (Page 140.)

So in *Nuckols v. Stone* (Ky.), 87 S. W. 799, it was said:

"The reservation of a life-estate by the grantor was meaningless, unless he intended a present interest to vest in the grantees: He thereby necessarily recognized the grantees as the owners of the property, subject to the life-estate."

And in *Cribbs v. Walker*, 74 Ark. 104, 85 S. W. 244:

"In our opinion the form and language of the instrument clearly indicate the intention of the grantor to convey the legal title *in præsenti*. It contains apt words of conveyance usually employed in a deed of conveyance, and the reservation to the grantor of the use during his life and the right to direct a conveyance to be made by the trustee to other parties and to recall or revoke the trust all, instead of showing an intention to make the instrument a testamentary paper to take effect only at his death, imply an immediate passage of the title. If Cribbs intended the paper to be a will, and retained it in his possession as such, why the necessity of incorporating those reservations in the instrument? If it was not to take effect until his death, the reservation of the life-estate and right to direct a sale and to revoke the trust were useless, as under a will he possessed those rights and powers, and more, without such express reservation." (Page 118.)

We find no difficulty in reaching the conclusion that there was an effective delivery of the deed. There was a physical delivery to the depositary and to the beneficiary. There is no evidence, at least no convincing evidence, of any retention of control by the grantor. All of the circumstances tend to show a purpose on his part that there should be an immediate vesting of title in the grantee, the enjoyment alone being postponed until his death, and the intention of the grantor is recognized as the determining factor where the situation admits of doubt.

"The question is to be determined largely by the intention of the grantor, which may be ascertained by his

acts and declarations, and by the circumstances attending the execution of the deed and its delivery to a third party." (*Latimer v. Latimer*, 174 Ill. 418, 428, 51 N. E. 548.)

"The whole matter, as we view it, is one of intent on the part of the grantor." (*Albrecht v. Albrecht*, 121 Iowa, 521, 524, 96 N. W. 1087.)

"The real test of delivery is this: Did the grantor by his acts or words, or both, intend to devest himself of title? If so, the deed is delivered." (9 A. & E. Encycl. of L. 154.)

The mere fact that a deed is found in the possession of the grantee is often said to afford a presumption of a delivery. (13 Cyc. 733, 749; 9 A. & E. Encycl. of L. 159; 2 A. & E. Encycl. of L. [Supp.] 394.) In most but not all of the cases cited in support of this proposition the deed passed directly from the grantor to the grantee, and many of them are affected by the consideration that in such a case it is natural to suppose that a benefit to the grantee is intended—a consideration which fails where, as in the present instance, it passed through the hands of an intermediary. (*Thomas v. Sullivan*, 138 Mich. 528, 101 N. W. 528.) But here all the known facts are consistent with the theory of a valid delivery. There is direct evidence that just before placing the deed with the banker the grantor declared his purpose that when he died it should be handed over to the grantee, and that upon his death the depositary did so deliver it. All that is lacking fully to establish delivery is a showing of the instructions given to Bowlus—a gap caused by his lapse of memory—and this may be supplied by presumption or inference from the attendant circumstances, including his own conduct.

The judgment is reversed and a new trial ordered.