No. 42,468

In the Matter of the Estate of James G. Loper, Deceased. (ELIZA-
BETH B. LOPER, *Appellant,* v. JAMES G. LOPER, JR.; H. B. ESTES,
Executor of the Estate of James G. Loper, Deceased; and J. A.
BABICKI, *Guardian Ad Litem* of JAMES G. LOPER, JR., *Appellees.*)

(368 P. 2d 39)

Opinion filed January 20, 1962.

*E. Edward Johnson,* of Topeka, argued the cause, and *L. M. Ascough,
John A. Bausch,* and *Wayne T. Stratton,* of Topeka, were with him on the
briefs for appellant.

*Raymond Briman,* of Topeka, argued the cause, and *Lester M. Goodell,
Margaret McGurnaghan, Marlin S. Casey* and *Gerald L. Goodell,* of Topeka,
were with him on the briefs for appellee James G. Loper, Jr.

The opinion of the court was delivered by

FATZER: J.: This proceeding was commenced in the probate
court by H. B. Estes, executor of the estate of James G. Loper,
deceased, to determine the validity of a warranty deed previously
executed by the decedent conveying certain property in Topeka to
his grandson, James G. Loper, Jr., and to construe paragraph two
of the decedent's subsequently executed last will and testament de-
vising the income from that property to his wife, Elizabeth B. Loper,
for her lifetime. The probate court determined that the warranty

deed was validly delivered and passed fee simple title to the grandson, James G. Loper, Jr., and that paragraph two of the will was inoperative and ineffectual. After hearing evidence on appeal, the district court made findings of fact and conclusions of law and affirmed the judgment of the probate court. The widow has appealed.

The facts, for the most part, were undisputed. On October 8, 1957, James G. Loper, the decedent, was a single man and the owner of Lots 90, 92, 94 and 96 on Seward Avenue, Garden Park Addition, Topeka, which was commonly referred to as the "Corner." On that date the decedent executed a warranty deed conveying the property in fee simple to his grandson, James G. Loper, Jr. The deed was prepared by H. B. Estes, a long-time friend and business advisor of the decedent. The decedent told Estes that his son had helped build up the property and that "he wanted the boy (James G. Loper, Jr.) to have something out of it because he figured he owed his son who was dead." After the decedent executed the deed, he delivered it to Estes with instructions to retain it, stating, "at my death record this for that boy," and deliver it to him. There was no evidence that the grandson was aware of the deed. Estes testified that there was no understanding with the decedent whether he could get the deed back, and stated that had the decedent requested the deed he would have given it to him. At no time did the decedent request the deed be returned to him, or be altered, destroyed or modified in any way.

On a date not disclosed by the record the decedent employed an attorney at law to prepare his last will and testament. On February 15, 1958, the decedent married Elizabeth Loper, the appellant. On June 3, 1959, he took his will to Estes' office where it was redrawn by Estes exactly as the decedent requested, which was not consented to by his wife. The only change made was the addition of paragraph "Second" which reads:

"I bequeath and devise to my wife, Elizabeth Loper, the income from the property located at 3026 Seward Avenue, Topeka, Kansas, and described as Lots 90, 92, 94 and 96 on Seward Avenue, Garden Park Addition, Shawnee County, Kansas, for her lifetime, with the provision that she keep up taxes, insurance, and up-keep of the property. Upon her failure to do so, the income goes to my grandson, James Guy Loper, Jr., to whom said property has been deeded."

The appellant testified that she overheard a telephone conversation between Estes and the grantor, sometime after their marriage,

in which the grantor requested he wanted to change the deed over to her and Estes had indicated it was not necessary to change the deed because the will would take care of the matter. Estes denied there was ever any conversation between the decedent and himself concerning a change in the deed, and specifically denied having a telephone conversation as testified to by the appellant.

The district court found that at no time subsequent to the execution of the deed on October 8, 1957, until his death, did the decedent request that the deed be returned to him or be altered, destroyed or modified in any way; that the deed remained in the exclusive custody of Estes from October 8, 1957, until the decedent's death on November 6, 1959, and is still in his custody pending the determination of this action; that when the decedent duly executed his last will and testament containing paragraph two, nothing was said by the decedent to Estes regarding the deed other than the language appearing in paragraph two, and that from the date the will was executed until his death, the decedent did not request the return of the deed, or that it be destroyed, altered or modified in any way. The district court concluded as a matter of law that the deed was an effective and valid transfer of title in fee simple to James Guy Loper, Jr., and that the decedent effectively divested himself of title to the real estate by depositing the deed with Estes to receive and hold the same for delivery to the grantee after the decedent's death with the intention to place the deed beyond the control and custody of the decedent, thereby giving it effect as a present conveyance. It further concluded that the second paragraph of the decedent's last will and testament was inoperative and ineffectual as the decedent effectively divested himself of title to the real estate prior to the execution of his last will and testament.

The parties concede that the only question involved is whether there was substantial and competent evidence before the district court to support its conclusion that the decedent effectively divested himself of title by the deed in question.

In support of appellant's contention that there was no substantial evidence before the district court to support the finding and judgment, she argues that the will which was made subsequent to the deed contained a provision in direct contradiction of any intention of the decedent to divest himself of title when the deed was executed, and asserts that while the decedent had no understanding with Estes concerning the return of the deed, Estes testified that he would have given the deed back had the decedent requested it.

She also relies upon the telephone conversation she overheard between the decedent and Estes when the decedent requested the deed be changed and he was told that the provisions of the will would take care of the problem.

It has long been the rule in Kansas that before a deed can operate as a valid transfer of title there must be a delivery of the instrument which becomes effective during the life of the grantor. What constitutes sufficient delivery is largely a matter of intention, which is a question of fact, unless the evidence is uncontroverted, the essential question being one of intent on the part of the grantor, and if the grantor, by words or acts, manifests an intention to divest himself of title and vest it in another, it is sufficient to constitute a valid delivery. (*Reed v. Keatley*, 187 Kan. 273, 276, 277, 356 P. 2d 1004, and cases cited.) The rule is likewise settled that the grantor may effectively divest himself of title if he deposits the deed with a third person to receive and hold the same for delivery to the grantee after the death of the grantor, with a declared or manifest intention to place it beyond the custody and control of the grantor, and thereby to give it effect as a present conveyance. (*Young v. McWilliams*, 75 Kan. 243, 89 P. 12; *Hush v. Reeder*, 150 Kan. 567, 95 P. 2d 313.)

The important inquiry here, therefore, is whether the decedent gave the deed to Estes, the custodian, intending thereby to part with the title to the property. If the grantor retained control of the deed, the situation was substantially the same as though he had held it in his own possession. The evidence was undisputed that the grantor wanted "the boy," his grandson, to have the property because his son who was deceased had helped him accumulate it and build it into a business. After the deed was executed he delivered it to Estes with instructions to retain it and record and deliver it to his grandson at his death. While the appellant testified to a purported telephone conversation between the decedent and Estes following their marriage, the district court's finding of fact on that point is conclusive that the decedent did not request the return of the deed or that it be destroyed, altered, or modified in any way.

We are of the opinion that what was said in *In re Estate of Hulteen*, 170 Kan. 515, 227 P. 2d 112, is controlling. There, as here, the grantor had a friend and business advisor in the real estate and insurance business. There was evidence that the grantor went to the office of the real estate man and executed the deed in question and

delivered it to the custodian, stating, "You put this in your safe and keep it there until I am gone and give it to the Bethel Lutheran Church." There, as here, the grantor transacted other business with the custodian following the execution of the deed but never requested that the deed be returned. In holding that a valid delivery was effected which vested title in the church, the court said:

"Tested by the foregoing general rules, we think there can be no doubt but that the evidence in this case leads to the inescapable conclusion that a valid delivery of the deed was made by Hulteen during his lifetime. All of the facts and circumstances clearly show the intention on his part to surrender possession and control of the deed to Eklund for delivery to the Church after his death. Despite the testimony of Miss Wiggins to the effect there was a 'general understanding' in the office (and which was a mere conclusion on her part) that Hulteen could have had the deed back had he so desired, the lower court was fully justified in finding that at no time after depositing the deed with Eklund did he ever attempt to exercise any control or authority over it, and that at the time it was his intention to surrender possession of it to Eklund. And neither was Hulteen's control of the property and his collection of rents and profits therefrom, subsequent to the execution of the deed, inconsistent with the passing of title at the time he delivered the deed to Eklund. As to that phase of the matter the test is not whether the grantor has retained possession or control of the property, but rather, whether he has retained possession or control of the deed. We have no difficulty whatever in agreeing with the lower court that a valid delivery was effected and that such delivery resulted in vesting title in the Church at the time the deed was deposited with Eklund." (1. c. 519.)

See, also, *Hicklin v. DeVore,* 179 Kan. 345, 295 P. 2d 668.

While the will was made subsequent to the deed, we do not think its provisions are in contradiction to any intention of the decedent to divest himself of title. In fact, that part of the language of paragraph two of the will—to whom said property has been deeded—establishes and confirms the intent of the decedent that when he deposited the deed with Estes he intended at that time to divest himself of title to the property and vest it in his grandson subject to the use and enjoyment of the property during his lifetime. The most that can be said concerning the language of paragraph two is merely that it was the result of incompetent advice given the decedent by a layman and that following the advice, the decedent attempted to bequeath rents and profits from the land, and not the land itself. Moreover, and as a result of that advice, the decedent was not aware that he could not bequeath rents and profits from the property since it had previously been conveyed to his grandson.

Considering all of the evidence concerning the delivery of the deed to Estes, the instructions at the time of delivery, and the subsequent acts of the decedent, the district court did not err in holding that the deed was an effective present conveyance of the property and vested title in James Guy Loper, Jr.

The judgment of the district court is affirmed.