No. 43,814

CLAUDE N. YAPLE, Special Administrator of the Estate of W. O. Yaple, Deceased, *Appellant,* v. DORIS MORRIS and VELMA THODE, *Appellees.*

(398 P. 2d 320)

Opinion filed January 23, 1965.

*Dennis O. Smith,* of Hutchinson, argued the cause, and *Frank S. Hodge, H. Newlin Reynolds,* and *Kenneth E. Pierce,* of Hutchinson, were with him on the briefs for the appellant.

*W. Y. Chalfant,* of Hutchinson, argued the cause, and *H. R. Branine* and *C. E. Chalfant,* of Hutchinson, were with him on the briefs for the appellees.

The opinion of the court was delivered by

FATZER, J.: The appellant, the special administrator of the estate of W. O. Yaple, deceased, commenced this action in the district court of Reno County, against the appellees, Doris Morris and Velma Thode, to set aside two warranty deeds executed by W. O. Yaple in favor of the appellees, upon the theory that the deeds were testamentary dispositions and that they were not delivered to the grantees during the lifetime of the grantor. The case was tried by the court which made findings of fact and conclusions of law that the deeds were not testamentary dispositions and that there was a valid delivery of them which vested a present interest in the

grantees during the lifetime of the decedent with only the enjoyment of the property being postponed until after the decedent's death. The special administrator has appealed.

The decedent, a resident of Reno County, had, during the course of his lifetime, acquired ownership of his residence property in the city of Nickerson and an 80-acre farm in Rice County which he owned on February 17, 1960. The decedent was a widower who lived alone, he was elderly and nearly blind but was intelligent and mentally alert at all times until his death on March 2, 1961. While he had a number of relatives, mostly nieces and nephews, his devotion and affection was largely given to his nieces, Doris Morris and Velma Thode, the appellees.

On February 17, 1960, the decedent telephoned Lula M. Dunn and requested her to drop by his home. Mrs. Dunn was in the insurance and real estate business in Nickerson and had been a friend of the decedent for over 25 years. Sometime prior to 1955, W. O. Yaple and his wife had Mrs. Dunn prepare a last will and testament which she notarized, but the purported will was void for want of proper execution. About a year prior to February, 1960, the decedent discussed with Mrs. Dunn the making of an immediate gift of all his property to the appellees, but had done nothing more about it.

On the day in question, February 17, 1960, the decedent informed Mrs. Dunn he wanted to give all of his property to Doris Morris and Velma Thode and reserve to himself the right to occupy and use the property; that all of his physical needs were taken care of and that he had no use for the property other than to stay in his home and receive the rents from the farm land. He stated that the "girls" had been good to him; that he had finished with the property and that he wanted them to have it; that he knew they would take care of things, and it would make him happy to know they had the property. He further stated that his other relatives were "snoopy," saying, "I can't see but I can hear." The decedent talked coherently; understood and knew what he was doing; knew the nature and extent of his property and how he wanted to transfer it, and said, "I have decided what I want to do."

The decedent made no mention of a will, but requested Mrs. Dunn to prepare "deeds" conveying all of his real estate to Doris Morris and Velma Thode, and dictated an affidavit to her, which he wanted prepared in connection with the deeds. Mrs. Dunn returned to her office, prepared the deeds and affidavit, and then

returned to the decedent's home where the deeds and affidavit were executed and acknowledged by him. The decedent then put the documents in a blank envelope and sealed it and told Mrs. Dunn that he would take care of the deeds. He instructed Mrs. Dunn not to mention to anyone what he had talked to her about, but he did not state whether he was going to tell the girls about the gifts immediately. Following the execution of the deeds and the making of the affidavit, the decedent seemed much relieved. He and Mrs. Dunn chatted about current affairs, in which he was very much interested, and he talked to her about some books he had formerly read. He became very philosophical, mentioned that he was ready to go, and quoted the closing lines of Kipling's Recessional.

On February 26, 1960, the decedent took the sealed envelope to the Nickerson State Bank for the purpose of placing it in escrow. He talked to Aaron F. Toews, the bank's cashier, who had known him as a customer and a depositor since 1941. The decedent handed Toews the envelope and Toews testified he said that, "he had given his land and also his house to two of his nieces, Doris Morris and Velma Thode, and he wished to place that envelope in escrow, to be delivered to these two girls after his death," and that the deeds to the property were inside the envelope. At the direction of the decedent, Toews typed on the outside of the envelope the words "Escrow, W. O. Yaple, to be delivered to Velma Thode and Doris Morris at the death of W. O. Yaple." Toews also made his own handwritten notation on the envelope, showing the escrow fee of $2.50 paid by the decedent, the date, and that it was placed in escrow by W. O. Yaple. After the deeds and affidavit were placed in escrow, the decedent never attempted to reclaim them or get them back, never attempted to exercise any control or authority over them nor attempted to modify, alter or destroy them. He continued to occupy the home, pay the taxes and receive the rents and income from the farm land until his death on March 2, 1961.

A day or so following the decedent's death, the bank called Doris Morris and Velma Thode and asked them to come in for the opening of the escrow envelope. A vice president of the bank opened the envelope in their presence and delivered the deeds and the affidavit to the grantees. The deeds followed the Kansas statutory warranty form (G. S. 1949, 67-203), and conveyed the decedent's residence and the farm land to the two grantees in fee

simple as tenants in common. The deeds were duly recorded. The affidavit in escrow with the deeds was admitted in evidence, and reads:

"I, the undersigned W. O. Yaple, hereby direct that the Warranty Deeds made and signed this 17th day of February, 1960, transferring my Nickerson property and my Rice County property to Mrs. Velma Thode and Mrs. Doris Morris shall replace any and all former wills and/or agreements. The above deeds shall be held at the Nickerson State Bank until my death at which time they shall be delivered to the above named persons, after recording."

On March 8, 1961, Velma Thode was appointed and qualified as administratrix of the decedent's estate. On June 23, 1961, she filed an inventory which did not list the real estate the decedent had given to the appellees. On his own petition, the appellant, Claude N. Yaple, an heir-at-law of the decedent, was appointed special administrator for the purpose of contesting the validity of the deeds and seeking to bring the property into the decedent's estate as an asset thereof.

The appellant contends that the instruments executed by the decedent were testamentary in character and that he did not intend to convey any real estate or interest therein whatever before his death. The appellant concedes it is necessary to determine the intent of W. O. Yaple when he executed the documents in question, but argues the evidence shows that the acts and words of the decedent clearly disclose an intention on his part to make testamentary disposition of his property. The appellant relies chiefly upon a letter the decedent wrote to him in 1955, which states:

". . . We have written a Will, properly notarized, directing that what real estate property we have, be sold for cash and with bonds, stock or cash in bank create a single fund to be divided equally between the eleven nephews and nieces named separately in our Will. We hope this can be done without courts or lawyers, with the advise and consent of the Judge of Probate Court."

The quoted portion of the letter tends to indicate that the decedent thought he had executed a valid will in 1955 by having his signature notarized. The appellant's copy of that instrument was offered in evidence, and the appellees' objection that it was not the best evidence was sustained subject to appellant's right to show why the original was not offered. The original was never produced, and no will of the decedent was offered for probate although more than one year had passed since his death.

The record demonstrates that in 1960 the decedent wanted the appellees to receive all of his real estate, and the sole question is

whether he succeeded in effectuating his desire so that the deeds he executed conveyed good title to the appellees during his life-time, or whether he failed therein and the real estate remained an asset of his estate with the appellant entitled to share in the ownership.

It is unnecessary to write a treatise on the law of the delivery of deeds. The question has been considered many times by this court, and in the recent case of *Reed v. Keatley*, 187 Kan. 273, 356 P. 2d 1004, it was said:

"It is well settled in this jurisdiction that before a deed can operate as a valid transfer of title there must be a delivery of the instrument which becomes effective during the life of the grantor. (*Wuester v. Folin*, 60 Kan. 334, 56 P. 490; *In re Estate of Hulteen*, 170 Kan. 515, 227 P. 2d 112.) What constitutes sufficient delivery is largely a matter of intention, which is a question of fact unless the evidence is uncontroverted. The whole matter of delivery is one of intent on the part of the grantor, and if the grantor, by words or acts, manifests an intention to divest himself of title and vest it in another, it is sufficient to constitute a valid delivery. (Citations.) It is not necessary that the divestment of title or the delivery of the deed be made directly to he grantee. The grantor may effectively divest himself of title if he deposits the deed with a third person to receive and hold the same for delivery to the grantee after the death of the grantor, with a declared or manifest intention to place it beyond the custody and control of the grantor and thereby to give it effect as a present conveyance. (Citations.) In *Wuester v. Folin*, supra, the usual test was said to be:

" 'Did the grantor by his acts or words, or both, manifest an intention to make the instrument his deed, and thereby divest himself of title? When the deed has passed beyond the control of the grantor, and he has placed it in the hands of a third person with a declared or manifest purpose to make a present transfer of the title, a formal acceptance by the grantee is not required.' (l. c. 337.)" (l. c. 276, 277.)

Applying the foregoing rule, we are of the opinion there can be no question but that the evidence leads to the inescapable conclusion that a valid delivery of the deeds was made by the decedent during his lifetime. While there was testimony to the effect that the decedent told two or three people he had willed his property to the appellees, Mrs. Dunn testified the decedent specifically asked her to prepare deeds to the property and under questions posed by the court, she further testified that the affidavit was in effect dictated to her by W. O. Yaple and that she prepared the deeds and the affidavit in accordance with his instructions. This evidence supports the district court's finding that the decedent wanted his property transferred to the appellees by deeds and that intention was manifested by his instructions to the cashier of the

bank that the deeds were to be placed in escrow for delivery to the grantees upon his death. All of the facts and circumstances clearly show an intention on the part of the decedent to surrender possession and control of the deeds to the bank for delivery to the appellees after his death, and he never attempted to exercise any control or authority over them during his lifetime, nor did he request the return of the deeds or attempt to reclaim them or destroy, alter, or modify them in any way. The fact that the grantees did not know of the existence of the deeds before the grantor's death did not defeat the valid constructive delivery to them, nor impair their title to the real estate conveyed thereby. (*In re Estate of Loper*, 189 Kan. 205, 368 P. 2d 39.) Likewise, the fact that there was no actual consideration paid for the property does not impair a delivery of the deeds but raises the inference that a gift was intended. (*Gilkison v. Roberts*, 154 Kan. 52, 60, 114 P. 2d 797.) Moreover, the fact that the decedent continued to occupy the property, pay the taxes, and collect income from the farm land during his lifetime is not inconsistent with the passing of the title at the time he delivered the deeds and affidavit to the bank. All of the known facts are consistent with the theory of an effective delivery of the deeds which manifested the decedent's intention to vest a present interest in the grantees during his lifetime with only the enjoyment of the property being postponed. When the deeds were delivered to the grantees by the bank following the decedent's death and they were duly recorded, the real estate conveyed thereby was no part of the decedent's estate at the time of his death and the appellant was not entitled to maintain his action to set them aside. In this connection see *Young v. McWilliams*, 75 Kan. 243, 89 Pac. 12; *In re Estate of Hulteen*, 170 Kan. 515, 227 P. 2d 112; *Hicklin v. DeVore*, 179 Kan. 345, 295 P. 2d 668, and *In re Estate of Loper*, supra.

Considering all of the evidence concerning the execution of the deeds and their delivery to the bank, the instructions given by the decedent when they were placed in escrow, and the fact that he did not thereafter attempt to exercise any control or authority over them, requires us to conclude the district court did not err in holding that the deeds in question constituted an effective present conveyance of the property and vested fee simple title in the grantees.

The judgment is affirmed.