517 P.2d 540

**Nora CLUFF and Nora Cluff, Administratrix of the Estate of William Bert Cluff, Plaintiff and Appellant,**

**v.**

**Verne B. CLUFF and Luana R. Cluff, Defendants and Respondents.**

**No. 13162.**

Supreme Court of Utah.

Dec. 19, 1973.

3. Peterson v. Fowler, 29 Utah 2d 366, 510 P.2d 523 (1973); 5 C.J.S. Appeal and Error § 1464 (1).

Richard C. Dibblee and Gary E. Atkin, Rawlings, Roberts & Black, Salt Lake City, for plaintiff and appellant.

Eldon A. Eliason, Delta, for defendants and respondents.

ELLETT, Justice:

The plaintiff is the second wife of William Bert Cluff, deceased, and stepmother of the defendant Verne Cluff. She appeals from a judgment of no cause of action rendered against her in a suit to collect on a debt evidenced by a lost or destroyed promissory note.

Some time in 1938 Verne's father and mother bought a service station and for reasons not revealed in the record caused title to be placed in the name of Verne, who was then 16 years of age. Verne was then a student in high school and worked with his dad in the service station. Three years later the property was leased to Milton Melville. The lease was signed by Verne and his parents and contained the following language: "That Verne Cluff is the legal owner and Bert W. Cluff and

Ruby Cluff the equitable owners of the following described property . . ."

The legal description of the land followed.

On March 25, 1946, Verne Cluff by warranty deed conveyed his interest in the property to his father and mother as joint tenants. Thereafter the mother died, and the father as survivor became the sole owner of the property.

In February, 1952, the father married Nora, the plaintiff and appellant herein.

About 1959 Nora and her husband moved away and leased the service station to Verne. There was a trailer park upon the remaining land, which they operated during the summer months. This arrangement continued until October, 1962, when Nora and Bert by warranty deed conveyed most of the land, including the trailer park and service station, to Verne and his wife.

Verne signed the note in question under a later date whereby he agreed to pay $36,000 to Bert Cluff at the rate of $150 per month for 20 years without interest. Nora explained the delay in signing the note as being due to the fact that complete delivery could not be made until January 1, 1963, because a part of the property was under lease to another person.

Verne paid $150 a month beginning with January, 1963, and continuing until Bert's death in January, 1967, a total of 49 payments amounting to $7350.

Bert reported the sale of the land to Verne as an installment sale on his income tax statements and reported a profit of 61% of the amount received each year and paid taxes thereon.

The court admitted into evidence a piece of paper containing the following wording written in the hand of Bert:

Contract $150.00 20 years start Jan 1 1963 no interest Deed from Bert Cluff Nora B. Cluff to Verne. Payment to B. C. until [sic] death and then to family until [sic] paid. 138 ft.

The account book kept by Bert was also received into evidence and shows an entry as follows:

| | Cost | Depreciation allowed |
|---|---|---|
| Sold for $150.00 per month for 20 years | | |
| Sale garage trailer park Fillmore | | |
| Garage service st. | 7773.00 | 4164.28 |
| Trailer park | 3100.00 | 1455.98 |
| Real Estate cost | 8000.00 | |

Verne's brother Joe, who lived in California, testified that in 1965 he received a letter from their father in which was enclosed a sealed envelope with the notation "To Verne" written in the upper left-hand corner and that the letter directed him to keep the sealed envelope until the father's death and then to give the sealed envelope to Verne or to destroy it. He further testified that when he learned of his father's death, he opened the sealed envelope and discovered the note signed by Verne and written across the face of it the words "Paid in full." He further testified that he brought the envelope and a photostatic copy of the note with him to his father's funeral and gave them to Verne and that a few weeks later he sent the original note to Verne by registered mail.

Verne testified about the note and claimed that he destroyed it or lost it, so that it could not be placed in evidence.

The court found that the note and monthly payments were solely between Verne and his father and that the same were cancelled during the lifetime of the father. It also found that there was no consideration given for the note for the reason that Bert and Ruby Cluff held the property as trustees for Verne, and when it was deeded back to Verne, it was pursuant to an agreement made in 1946 whereby the parents only took title from Verne in order for him to avoid possible creditors. It also found that Verne signed the note to evidence a future gift to his father for the life of the father only.

These findings cannot stand.

Over objection made, the court permitted Verne to testify to an agreement in 1946 with his father whereby the father agreed ". . . that he could deed it back to me."

The father is now dead, and the transaction testified to was equally within

the knowledge of the witness and the deceased under whom plaintiff claims. Death having sealed the lips of the deceased, the law seals those of the survivor who seeks to relate the facts of the transaction as he would have them to be.[1] It was error to permit the testimony to be given.

Without this testimony there is nothing upon which the court could find as it did. In fact, Verne did not know what his interest in the land was when it was put in his name nor what that of his parents was. He claims that it was his land because it was in his name. However, when asked if he considered that his parents had an interest in the land, he testified as follows:

A Well, yes, we all worked together. It was—

Q Well, answer my question, then, you didn't feel in 1938 to 1947 that you owned the property completely?

A Yes, I figured I owned it completely.

Q All right. Did you feel they had any interest at all in the property?

A As far as the property itself, the deed, the property was mine. I always—

Q My question is, did you feel they had any interest at all in the property from—

A Yes, being my guardian and parents, yes.

Q Just as guardian and parent?

A Yes.

Q Didn't you feel they had an equitable interest in that property?

A Well, I knew that we were making our living off of the property.

It thus appears that the family bought the service station with money earned from operating it and that for reasons unknown had the title placed in the name of their 16-year-old son, who worked with them.

There is no competent evidence in the record to show what the consideration was for the deed from Verne to his parents. There is evidence of what the consideration was for the note from Verne to his father, to wit: The transfer of the land by the father and the surrender by the stepmother of her dower right.

 If Bert mailed the note to Joe with directions to destroy the sealed enclosure or to give it to Verne upon Bert's death, he made Joe his agent to carry out the request. He could have given other directions to Joe at any time, and Joe would have been duty bound to obey them. The fact that Verne continued to make payments of $150 per month from 1965 to the death of Bert in 1967 and the further fact that Bert received the payments as made show that there was no present intention on the part of Bert to forgive the debt during his lifetime and thus relieve Verne from paying it. It was merely an

1. Section 78–24–2, U.C.A.1953.

attempt to make a testamentary disposition and would be void.

There has been paid only $7350 on a $36,000 obligation. The unpaid remainder is a debt due and owing to the plaintiff as administratrix of the estate of Bert, and the trial court should have so held.

The finding of a gift by Verne for the life of his father only cannot be sustained. If it were a gift, why would Verne have signed a note, and why would the father have paid an income tax upon 61% of the amount received.

The judgment is reversed. Costs are awarded to the appellant.

CALLISTER, C. J., and HENRIOD and TUCKETT, JJ., concur.

CROCKETT, Justice (dissenting) :

I am willing to accept the version of the evidence as believed by the trial court, and the findings as made by him. My own predilections about the matter, one way or the other, should be of no significance. Notwithstanding considerations of logic, either as to what ought to be, or what one might naturally suppose to be, the fact is that human beings do things at times which seem to others strange and illogical. However, I personally have no difficulty in accepting as a fact that a father desired to forgive a note owed by his son, nor that he so indicated in writing. Especially so, because the brother Joseph, whose pecuni-ary interest could only be adversely affect-ed, so testified under oath; and there is nothing to refute it, except for someone to say that to him it does not seem "reason-able." It is submitted that in view of that testimony, the determination as to whether it happened, and whether it is "reasonable" or not, is absolutely and incontestably the prerogative of the trial court.

Upon competent evidence the trial court found:

> The Court further finds that the said Promissory Note and the said financial arrangement was *terminated and cancelled during the lifetime of the father,* William Bert Cluff. That there was a complete discharge and satisfaction of the note by William Bert Cluff *and a delivery of the Note marked "paid in full" by the payee.* The Court further finds from the only credible evidence re-specting the said note that the father, William Bert Cluff, mailed it to a son, Joseph L. Cluff, after having written on the face of the note "paid in full, Bert Cluff" and directed the son, Joseph L. Cluff, to either deliver the Note to Verne B. Cluff or to destroy it.
> [Emphasis added.]

If we accept the facts as believed and found by the trial court, as the universally accepted rule requires us to do, the father Bert Cluff acknowledged in writing that any obligation his son Verne had under the note was fully satisfied and discharged;

and he delivered the note to his other son Joseph. This acknowledgement and delivery without any reservation could certainly be regarded by the trial court as indicating present intention of Bert Cluff to divest himself of any ownership or control and as constituting Joseph as an agent, not for the father, but as an agent for his brother Verne to so deliver the note.

It is the well settled and invariable rule that such an unconditional delivery of an instrument of ownership during one's lifetime can constitute a completed gift, and divest the donor of ownership. This court so held in an analogous situation in the case of Losee v. Jones,[1] where a mother delivered a deed to her daughter for delivery after the mother's death. In a case similar in principle the Kansas Supreme Court held that a deed that conveyed property to the decedent's grandson, which was given to a friend with instructions to retain the deed until decedent's death, and then deliver it to the grandson, was a good conveyance and took precedence over a subsequently executed will devising income from the same property to decedent's wife.[2] In another case applying this sound and universally accepted rule, the Arizona Supreme Court held that where there is an unconditional delivery of property to a third person, though not to be delivered to the donee until after the donor's death, if there is no intention to revoke, the gift is effective and valid as of the time of delivery, though the enjoyment may be postponed.[3]

On the basis of what has been said above, and in deference to the traditional rules of review respecting the prerogatives of the trial court and according verity to its findings and judgment,[4] I would affirm its finding that the father, Bert Cluff made a completed gift to his son defendant Verne B. Cluff.

---

1. 120 Utah 385, 35 P.2d 132.

2. In re Loper's Estate, 189 Kan. 205, 368 P.2d 39.

3. Allred v. Allred, 57 Ariz. 77, 111 P.2d 68; to the same effect see also 38 Am.Jur.2d, Gifts, Sec. 28, p. 832; and 38 C.J.S. Gifts § 86, pp. 905, 906.

4. As to affirmance of finding of delivery of deed see O'Gara v. Findlay, 6 Utah 2d 102, 306 P.2d 1073.